UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AGI SURETRACK, LLC,

      Plaintiff,

v.                                                                    Case No. 23-2372-JWB-GEB

OPISYSTEMS INC., INTEGRIS USA,
LLC, SETH TACKETT, and ADAM
WEISS,

      Defendants.

## MEMORANDUM AND ORDER

      This matter is before the Court on Plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 193) and Defendants' Motion for Rule 11 Sanctions (ECF No. 200). After review of Plaintiff's Motion, Defendants Response in Opposition (ECF No. 199), Plaintiff's Reply (ECF No. 202), and hearing parties' oral argument the Court **GRANTS** Plaintiff's Motion (**ECF No. 193**) and directs Plaintiff to file the Second Amended Complaint no later than **August 26, 2025**. After review of Defendants' Motion, Plaintiff's Response in Opposition (ECF Nos. 203 & 204), Defendants' Reply (ECF No. 207), and hearing parties' oral argument the Court **DENIES** Defendants' Motion Rule 11 Sanctions (**ECF No. 200**) and further orders any Motion for Sanctions by Plaintiff shall be filed no later than **October 3, 2025**. Lastly, a forensic examination of Mr. Penrod's personal laptop shall occur and Defendants shall produce the source code relevant to OPI's new "grain management product" no later than **September 19, 2025**.

1

## I.    Background

The operative Amended Complaint in this matter alleges a breach of an employment contract where Plaintiff, AGI SureTrack, LLC ("AGI"), takes action against OPISystems Inc. ("OPI"), Integris USA, LLC ("Integris") and its' former employees Seth Tackett and Adam Weiss alleging four claims: 1) breach of employment agreements with Plaintiff; 2) wrongful solicitation of Plaintiff's customers and employees, 3) tortious interference with Plaintiff's business relations; and 4) misappropriation of Plaintiff's trade secrets.[1]

The discovery process in this matter began approximately 20 months ago during a December 6, 2023 Scheduling Conference where Plaintiff began requesting the relevant source code to this litigation in Defendants' possession. With much dispute and Court intervention to date, the same disputes over source code discovery continue today. Through efforts at resolution, and motion practice, the parties made little progress in discovery in 2024 due to lengthy disputes over source code production. During a December 3, 2024 Discovery Conference, the Court ordered Defendants to respond to Plaintiff's First Set of Interrogatories and Requests for Production, propounded in October 2024, as well as to produce relevant source code discovery, under threat of sanction, by December 17, 2024 (ECF No. 143). Defendants seemed to make an effort at compliance, working with Plaintiff to produce *some* source code discovery, and served their responses and objections to Plaintiff on December 17, 2024. But the parties submitted a Joint Status Report to the Court on December 20, 2024 identifying additional outstanding discovery including source code

---

[1] Amended Complaint, ECF No. 75.

discovery, "OPI EPIC," that had yet to be produced. Notably, Plaintiff was seeking in December 2024 a complete production in accordance with Plaintiff's RFP No. 8, requesting "any code module" former AGI employees had any "input, commentary, or other review capacity on since September 12, 2022."

On January 15, 2025, the Court held another Discovery Conference with the parties and ordered production of the outstanding discovery and found good cause existed to amend the schedule to allow time for production. The Court ordered the relevant code module for "OPI EPIC" be produced no later than January 24, 2025 (ECF No. 157). In order to make the necessary progress in written discovery, the Court scheduled weekly discovery conferences every Friday during the month of February 2025. During these conferences, the Court took up the production of: 1) a Legal Summary document, again over Defendants' objections; 2) the sufficiency of Plaintiff's trade secret disclosures, ultimately finding them specific enough for Defendants to make adequate productions; and 3) ordered the scheduling of depositions up to what was supposed to be the end of fact discovery.

However, in light of the scheduled March 18, 2025 deposition of Mr. Sandeman, now one of Defendants' former employees, progress in fact discovery again halted when he did not appear for deposition on the scheduled date. Defendants told this Court the expensive discovery mistake was all a miscommunication, because counsel was unaware Mr. Sandeman was no longer an OPI employee, and not intentional. Two days later, the Court convened the parties to address this dispute, heard argument, and allowed Plaintiff to file a Motion for Sanctions for Defendants' deposition conduct. Also during the hearing,

Plaintiff informed the Court they had just discovered through the deposition of Defendant Weiss that Mr. Penrod, a witness in this case, was in possession of AGI's source code during his employment at OPI, despite OPI's written responses indicating otherwise,[2] and they would be looking more into these newly discovered facts. The parties avoided Court intervention regarding Plaintiff's Motion for Sanctions after agreeing through conferral with Defendants on costs, which to date have not been satisfied.

But factual discovery disputes, largely centered on source code, remained ongoing into April 2025. On April 7, 2025, Plaintiff contacted the Court over a dispute with Defense counsel over the timing of Defendants' disclosures surrounding Mr. Penrod's possession of AGI's source code during employment at OPI and requesting a jump drive Mr. Penrod isolated with the "stolen"[3] code. In a convenance of timing not at all lost on this Court, Defendants' counsel subsequently provided that very jump drive Mr. Penrod possessed since he began employment at OPI, in an April 9, 2025 letter to the Special Master managing pending Case No. 23-578-RK,[4] the Western District of Missouri case ("WDMO case"), for "safe keeping."[5] On April 15, 2025, the Court reviewed position statements from parties raising alarms about when this disclosure was made in this matter versus when

---

[2] ECF Nos. 194-4 at 3 & 194-5 at 3-4.

[3] Plaintiff's Second Amended Complaint uses the term "stolen" in reference to the BinManager source code in Mr. Penrod's possession. ECF No. 195 at 9. Defendants also quote the term in their reply in reference to the BinManager source code claims. ECF No. 199 at 8.

[4] On November 1, 2024, eleven months after the start of discovery in this case, Defendants filed a Motion to Consolidate with the Judicial Panel on Multi-District Litigation requesting this action be consolidated with the companion action pending in the Western District of Missouri. ECF No. 133 at 1. On February, 7, 2025, the Judicial Panel on Multi-District Litigation denied Defendants' Motion to centralize these actions. Case MDL No. 3135, ECF No. 24. The actions remain separate and in separate district courts.

[5] ECF No. 203-14.

Defendants' assert Plaintiff was made aware of the facts related to who possessed the jump drive through discovery in the WDMO case. Per the Court's last Order, all deadlines were stayed due to this ongoing source code discovery issue (ECF No. 192). Meanwhile, the parties' unconventional litigation tactics, to say the least, have resulted in additional motions for the Court to address, including the instant motions for Leave to File Second Amended Complaint and for Rule 11 Sanctions Against Plaintiff AGI Suretrack, LLC. Both are fully briefed and ripe for determination.

## II.    The Court Finds Good Cause to Allow a Motion for Leave to Amend Out of Time

When a party moves for amendment out of the time given in the Scheduling Order, the party must satisfy Fed. R. Civ. P. 16(b)(4) providing that the Scheduling Order "may be modified only for good cause and with the judge's consent." To demonstrate good cause the movant must "show the scheduling deadlines cannot be met despite the movant's diligent efforts."[6] The good cause requirement is satisfied if a plaintiff learns new information through discovery or if the underlying law has changed.[7] The Court exercises its' sound discretion in modifying a Scheduling Order, keeping in mind enforcement of the order shall avoid the "drastic sanction" of exclusion of material evidence.[8]

---

[6] *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015). *See also Macias v. BNSF Ry. Co.*, No. 19-2305-JWL, 2020 WL 3469680, at *2 (D. Kan. June 25, 2020).
[7] *Birch*, 812 F.3d at 1247. *See also Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).
[8] *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997). *See also Little v. Budd Co.*, No. 16-4170-DDC, 2018 WL 836292, at *2 (D. Kan. Feb. 13, 2018).

Here, the Court finds good cause to modify the Scheduling Order to consider the Motion for Leave to Amend out of time where material evidence would be excluded from this matter without extension. The leave to amend deadline in this matter was already extended twice and has passed. Once, per Order ECF No. 43, the leave to amend deadline in the Scheduling Order was extended until March 4, 2024, and lastly, in Order ECF No. 53, the deadline was extended until April 5, 2024 where the Court found parties had been diligently pursuing discovery and had a mediation scheduled. On April 5, 2025, Plaintiff moved to amend the complaint, and the operative Amended Complaint was filed on April 24, 2025 (ECF Nos. 62 & 75). But now, Plaintiff seeks a second amendment of the Amended Complaint to add an unjust enrichment claim based on facts they recently learned through diligent discovery.[9] Where the Court finds the material facts for amendment only came to light through depositions in March and April of this year,[10] the Court finds good cause exists to modify the scheduling order and allow consideration of Plaintiff's motion. The Court then turns to Fed. R. Civ. P. 15 to consider amendment.

## III.    Motion for Leave to Amend

The parties briefing clearly outlines the standard pursuant to Fed. R. Civ. P. 15 the Court should consider in ruling on a motion for leave to amend any pleading; that being timeliness of the motion, prejudice to opposing party, bad faith, and futility of the amendment. This Court also strongly considers amendment should be freely granted "when

---

[9] ECF No. 193.
[10] ECF No. 195-1 at 1, 4–6; ECF No. 195-3 at 6-9.

justice so requires."[11] Plaintiff contends amendment is necessary to add factual allegations and a claim for unjust enrichment based on the March 20, 2025 deposition testimony of Adam Weiss and the April 20, 2025 deposition testimony of Tim Penrod, a former AGI employee, now a current employee of Defendant OPI, revealing Mr. Penrod's possession of AGI's BinManager source code until at least the filing of this litigation in August 2023.[12] Defendants respond Leave to Amend should be denied because it is: 1) untimely where the deadline for motions to amend in the matter was April 5, 2024; 2) futile for failure to state a claim and the statute of limitations; and 3) brought in bad faith based on false representations Defendants possessed Plaintiff's source code.[13]

### a) Plaintiff's Motion is Not Brought with Undue Dealy

Untimeliness alone is a sufficient reason to deny a party leave to amend.[14] This is especially true when the party filing the motion has no adequate explanation for the delay or they knew, or should have known, the facts relevant for amendment at the time they filed

---

[11] The Court considers a number of factors in deciding whether to allow an amendment, including timeliness, prejudice to the other party, bad faith, and futility of amendment. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Monge v. St. Francis Health Ctr., Inc.*, No. 12–2269–EFM, 2013 WL 328957, at *2 (D. Kan. Jan. 10, 2013), *report and recommendation adopted*, 2013 WL 328986 (D. Kan. Jan. 29, 2013). Rule 15(a)(2) provides leave "shall be freely given when justice so requires," and the decision to allow an amendment is within the sound discretion of the court. *See J. Vangel Elec., Inc. v. Sugar Creek Packing Co.*, No. 11–2112–EFM, 2012 WL 5995283, at *2 (D. Kan. Nov. 30, 2012) (citing *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1494 (10th Cir. 1995)).
[12] ECF No. 193.
[13] ECF No. 199 at 5.
[14] *See Woolsey v. Marion Laboratories, Inc.*, 934 F.2d 1452, 1462 (10th Cir.1991); *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir.1990); *First City Bank v. Air Capitol Aircraft Sales*, 820 F.2d 1127, 1133 (10th Cir.1987).

7

the original complaint.[15] But mere "[l]ateness does not of itself justify the denial of the amendment."[16] Rule 15(a) does not restrict amendment of claims to a particular stage in the action.[17]

Defendants contend Plaintiff's motion is untimely because motions for leave to amend were due by April 5, 2024.[18] And, back on February 1, 2024, in discovery responses from the WDMO case labeled "Defendants' Exhibit A," OPI expressly told Plaintiff Mr. Penrod possessed "old work documents and source code" from his time employed at AGI.[19] Additionally, Defendants contend if Plaintiff was still unaware of Mr. Penrod's possession of source code discovery after the February 2024 WDMO discovery responses, Defendants' subsequent production of "Penrod Vol. 4" on January 5, 2025 in the WDMO case, before the close of discovery in this matter, also made Plaintiff aware of the source code and who possessed it.[20] Lastly, Defendants contend Plaintiff was aware of all the facts in this Second Amended Complaint when they filed the operative Amended Complaint, adding facts that Defendant Weiss and Mr. Penrod worked together to release new products allegedly misappropriating Plaintiff's trade secrets.[21] From these already plead facts and the WDMO productions alone, Defendants assert Plaintiff knew or should have known the facts necessary for this second amendment based on unjust enrichment and should have

---

[15] *See Woolsey*, 934 F.2d at 1462; *Las Vegas Ice*, 893 F.2d at 1185; *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365–66 (10th Cir. 1993).
[16] *Minter*, 451 F.3d at 1205 (quoting *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir.1975)).
[17] Fed. R. Civ. P. 15(a).
[18] ECF No. 199 at 6.
[19] *Id*. at 5.
[20] *Id*.
[21] Id. at 8.

diligently moved to amend.

Plaintiff replies, assuming Defendants' framing of this responsive discovery is correct, Plaintiff would have only found out this valuable source code discovery existed through written discovery responses and productions in another case, not the present matter in the District of Kansas.[22] And even if Plaintiff deduced who possessed their BinManager source code, and when, from the January 2025 source code production in the WDMO case, Plaintiff still would not have gotten the full story, let alone full discovery, related to their "stolen" source code until Defendants' April 9, 2025 letter containing the very jump drive with Plaintiff's source code, sought from the beginning of discovery in this case.[23] Even then, OPI insisted they never possessed AGI's source code,[24] and it was only Defendant Weiss' and Mr. Penrod's deposition testimony in March and April 2025 that gave Plaintiff a sufficient basis to request leave to amend to allege a claim of unjust enrichment against OPI.[25]

Defendants' WDMO discovery productions and the facts available during the original amendment do not support an argument for undue delay in asserting an unjust enrichment claim in this matter. For the Court too, the April 9, 2025 letter alarmingly exposed OPI's counsel was the party in possession of AGI's "stolen" source code since the outset of this case. And relevant evidence, in the hands of Defendants' counsel, clearly

---

[22] ECF No. 202 at 2-3.
[23] ECF No. 202 at 3.
[24] ECF Nos. 194-4 at 3 & 194-5 at 3-4.
[25] ECF No. 202 at 2; ECF No. 195-1 at 1, 4–6.

should have been provided in response to the written discovery in this matter, period.[26] Plaintiff rightfully fears had they not brought an action against Mr. Penrod in a separate litigation, they may never have located this relevant source code. Plaintiff asserts they did not seek amendment until now, because they had no reason to believe Mr. Penrod possessed AGI's entire BinManager source code library spanning 5 GB until the March and April 2025 depositions. As such, Plaintiff lacked knowledge of the necessary facts for amendment until recently. Largely, because Plaintiff was repeatedly mislead by counsel and the discovery responses in this matter, when Defendant OPI, through its' counsel, repeatedly insisted OPI, OPI's employees, and OPI's counsel did not have any of AGI's source code in its' possession, custody, or control.[27]  Thus, any undue delay in bringing the unjust enrichment claim was caused by Defendants' delay in bringing the relevant facts and discovery to this matter. Defendants' objection to amendment based on an undue delay they caused, is **OVERRULED**.

### b) Plaintiff's Unjust Enrichment Claim is Not Futile[28]

Tenth Circuit precedent holds futility of amendment is grounds to deny leave to amend.[29] An amendment is futile when the "complaint, as amended, would be subject to

---

[26] ECF No. 194-2 at 3-4.

[27] ECF No. 194-2 at 3-4; ECF Nos. 194-4 at 3; 194-5 at 3-4.

[28] The Court notes here it would typically take up the analysis for futility of amendment as the final factor in a Rule 15 consideration. However, where Defendant makes argument regarding bad faith in amendment and ties those arguments to their Motion for Rule 11 sanctions, the Court takes up futility ahead of the bad faith analysis for this motion.

[29] *See, e.g.*, *Hill v. City of Okla. City*, 448 Fed.Appx. 814, 816 (10th Cir. 2011); *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006); *Tommey v. Computer Scis. Corp.*, No. 11-2214-EFM, 2012 WL 646022, at *2 (D. Kan. Feb. 28, 2012).

dismissal."[30] In exercising its' discretion, the Court must be "mindful of the spirit of the federal rules of civil procedure to encourage decisions on the merits rather than on mere technicalities."[31] And the Court must accept as true all well-pleaded factual allegations and view them in the light must favorable to the pleading party.[32] The undersigned and cases in this District have held motions for leave to amend pleadings are typically not the appropriate context in which to determine when an alleged injury became reasonably ascertainable for purposes of the statute of limitations.[33] The issue truly before the Court in a leave to amend motion is whether plaintiff sufficiently alleged the amended claim.[34]

Unconvincingly, Defendants maintain leave to amend should also be denied for futility of amendment where Plaintiff failed to state a claim for unjust enrichment and the statute of limitations bars any claim. Defendants argue the unjust enrichment underlying Plaintiff's claim occurred when Mr. Penrod downloaded the BinManager source code onto the jump drive in February 2022, while working for Plaintiff, AGI.[35] And, because this occurred while Mr. Penrod was an AGI employee, and Plaintiff did not know, the first element is not met because no benefit was intentionally conferred by Plaintiff.[36] Then, because Mr. Penrod was not hired by Defendants until November 2022, and Defendants

---

[30] *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007).

[31] *Koch v. Koch Industries*, 127 F.R.D. 206, 209 (D. Kan. 1989); *Roderick Revocable Living Tr. v. XTO Energy, Inc.*, No. 08-1330-JTM, 2009 WL 603641, at *1 (D. Kan. Mar. 9, 2009).

[32] *Anderson v. Suiters*, 499 F.3d 1228, 1232 (10th Cir. 2007).

[33] *See e.g. Thompson v. Harness*, No. 11-1220-JTM, 2012 WL 2449851, at *4 (D. Kan. June 26, 2012); *Endecott v. Com. Floorworks, Inc.*, No. 16-2190-JTM, 2017 WL 1650814, at *6 (D. Kan. May 2, 2017).

[34] *See Endecott*, No. 16-2190-JTM, 2017 WL 1650814, at *6 (D. Kan. May 2, 2017).

[35] ECF No. 199 at 11.

[36] *Id*. at 9.

did not know he possessed Plaintiff's source code, the second element also fails for OPI's lack of knowledge of the benefit in hiring Mr. Penrod.[37] Defendants also deny ever accepting or retaining the BinManager source code from Mr. Penrod, asserting the third element for unjust enrichment also fails.[38] Desperately, Defendants finally argue, even if an unjust enrichment claim could stand, since it was "reasonably ascertainable" by Plaintiff the benefit left AGI in February 2022 when Mr. Penrod downloaded their source code, the claim for unjust enrichment arose in February 2022, and the statute of limitations has run barring the claim.[39]

Plaintiff replies, adamantly, and understandably so, in light of the March and April depositions, their claims for unjust enrichment clearly contain sufficient factual matter at this juncture to overcome the threshold of a motion to dismiss. In the proposed Second Amended Complaint, AGI plead a benefit was conferred upon OPI when Mr. Penrod, a current OPI employee, unbeknownst to Plaintiff, improperly retained AGI's BinManager source code during his employment with Defendant OPI on a jump drive.[40] And, the benefit of AGI's work was then conferred on OPI by Mr. Penrod when he used AGI's source code in the scope of his job duties at OPI.[41] AGI also alleges OPI had knowledge of the benefit and accepted it.[42] Plaintiff asserts the statute of limitations argument is nothing more than a fabricated narrative about when an unjust enrichment claim against Mr. Penrod arose,

---

[37] *Id*.
[38] *Id*. at 10.
[39] *Id.* at 11-12.
[40] ECF No. 202 at 4; ECF No. 193-2 at ¶¶ 163–167.
[41] *Id*.; ECF No. 193-1 at ¶ 165.
[42] ECF No. 202 at 4-5; ECF No. 193-2 at ¶ 166.

and not when the claim against Defendant OPI for possession of Plaintiff's source code arose.[43] Plaintiff claims their new facts support not just a claim that Defendant Weiss and Mr. Penrod worked together to reproduce AGI's trade secrets, as stated in the operative Amended Complaint, but that OPI employees actually possessed and used Plaintiff's trade secrets during employment at OPI. The Court agrees with Plaintiff's interpretation of the claim in the Second Amended Complaint.

Reviewing the facts plead in the Second Amended Complaint in the light most favorable to Plaintiff and taking into consideration parties' oral argument on amendment, Plaintiff's amendment is neither futile nor does the Court determine it to be barred by the statute of limitations. Plaintiff has alleged a plausible claim for relief based on unjust enrichment caused by Mr. Penrod's possession of AGI's source code during his employment with Defendant OPI, and Defendant OPI's subsequent use of the source code and retained benefit.[44] As a red herring, Defendants argue it is critical the Court conduct an additional analysis of Kansas case law on the statute of limitations for unjust enrichment claims, isolate when the alleged benefit was "reasonably ascertainable" to Plaintiff, and deny the amendment as barred. However, this Court has held on multiple occasions that a motion for leave to amend is not the appropriate setting to delve when exactly an injury was "reasonably ascertainable" for an unjust enrichment claim, so the Court respectfully declines to address the statute of limitations issue as dispositive of Plaintiff's claim here.[45]

---

[43] ECF No. 202 at 5.
[44] ECF No. 193-2 at ¶¶ 163–167.
[45] *See e.g. Thompson*, 2012 WL 2449851, at *4; *Endecott*, 2017 WL 1650814, at *6.

And even if the Court did take up Defendants' statute of limitations arguments from the pleading regarding when the injury became "reasonably ascertainable" to Plaintiff, Defendants' oral argument to the Court differed substantially from their pleading, admitting Plaintiff really had no reason to know their source code was in an OPI employees possession until at least Mr. Penrod's February 1, 2024 WDMO discovery responses, containing the admission. Thus, no two or three year statute of limitations would bar a claim for injury that, at the earliest, became "reasonably ascertainable" to Plaintiff, as Defendants concede, in February 2024. But further, it is clear to the Court, the March and April 2025 deposition testimony has revealed OPI employees possessed and used Plaintiff's source code during their employment at OPI, warranting Plaintiff's request for amendment in May 2025.[46] The Court has answered the question before it, a plausible and timely claim for unjust enrichment exists in Plaintiff's Second Amended Complaint. Thus, Defendants' objections based on futility and the statute of limitations are **OVERRULED**.

   c) **The Court Finds No Bad Faith or Falsehood in Amendment and no Undue Prejudice to Defendants**

Amendments adding causes of action will be denied if sought in bad faith.[47] The movant's bad faith must be apparent from evidence of record.[48] Typically, leave to amend is not denied unless the amendment would work an injustice to the defendants.[49] And a

---

[46] ECF No. 195-1 at 1, 4–6; ECF No. 195-3 at 6-9.
[47] *Koch*, 127 F.R.D. at 211.
[48] *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Koch*, 127 F.R.D. at 211.
[49] *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir.1971).

change in theory alone is not an adequate ground for denying an amendment, unless it also causes prejudice to the defendant.[50]

In their final plea, Defendants contend leave to amend should be denied for bad faith based on what they allege to be false representations made by Plaintiff's counsel regarding Defendants' transparency surrounding Mr. Penrod's possession of source code.[51] Defendants contend Plaintiff's counsel is creating a false narrative with the Court representing OPI, and its' counsel, purposefully concealed Mr. Penrod's possession of Plaintiff's source code.[52] Defendants contend where Plaintiff's counsel was, at the very least, aware of this discovery from productions in the WDMO case since February 2024, because Plaintiff's counsel is the same in both matters, and they should have brought the claims then, and bringing them now is only an attempt to delay discovery in this matter.[53]

Notably, Defendants do not allege this amendment is brought to prejudice them in any way nor do they allege any difficulties it will cause in discovery for the remainder of the case. Defendants' sole bad faith argument is based on "falsehoods" they believe Plaintiff is using to prolong discovery. But the argument frustrates and falls on deaf ears with this Court. The docket and case history demonstrate Defendants are the party who have unnecessarily stalled the production of at least three relevant source code productions to Plaintiff's written discovery requests since October 2024. The relevant source code productions have been the source of contention, and quite frankly disruption, of this case

---

[50] 127 F.R.D. at 210.
[51] ECF No. 199 at 13.
[52] *Id*.
[53] *Id*. at 14-15.

from the beginning of the discovery period. To that end, this Court has held extensive discovery conferences with the parties all in attempt to urge Defendants to produce the relevant source code to Plaintiff, which both parties know is at the center of the claims in this case. Further, Defendants' discovery responses *were* misleading, because OPI's counsel was asked to admit possession of AGI's source code, and repeatedly denied possession.[54] And it is not lost on the Court that Defendants' April 9, 2025 letter was a clear attempt to, at the very least, prolong Plaintiff's acquisition of the relevant jump drive to these unjust enrichment claims, if not completely obstruct it. The Court finds no bad faith on the part of Plaintiff, and to the contrary, is alarmed by Defendants' demonstrated bad faith in attempting to place the relevant jump drive out of the reach of this Court and obstruct the close of discovery in this matter. Thus, Defendants' bad faith objection to amendment is **OVERRULED**.

## IV.    Motion for Rule 11 Sanctions

Rule 11 of the Federal Rules of Civil Procedure governs the imposition of sanctions on attorneys.[55] In deciding whether to impose sanctions, the Court uses an objective standard asking whether a reasonable and competent attorney would believe in the merit of an argument.[56] Whether to grant sanctions is within the Court's sound discretion.[57] The purpose of Rule 11 sanctions is to punish an attorney for filing false or misleading pleadings

---

[54] ECF No. 194-2 at 3-4; ECF Nos. 194-4 at 3; 194-5 at 3-4.
[55] Fed. R. Civ. P. 11.
[56] *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1155 (10th Cir.1991) (citations omitted).
[57] *Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir.1993).

with the Court and ensures that an attorney abides by his duty as an officer of the court and conducts a reasonable inquiry into any fact alleged or denied.[58]

Here the Court finds no falsehoods or misrepresentations made by Plaintiff even warranting a discussion of sanctions. Defendants contend Plaintiff's representations of ignorance of Mr. Penrod's possession of AGI's source code, and their assertions they just "recently" learned of the possession in March 2025, are false because the February 2024 and January 2025 discovery productions in the WDMO case informed Plaintiff and their counsel Mr. Penrod possessed AGI's source code.[59] But the relevant question to this case is whether *Defendant OPI* possessed Plaintiff's source code, not Mr. Penrod. And the Court will not allow Defendants to hide behind discovery responses made in the WDMO case, about a different Defendant than is present in this matter, to absolve them of providing accurate discovery responses in this matter. The relevant discovery responses were unilaterally denied by Defendants to Plaintiff in this case; relevant to Defendant OPI's possession of AGI's source code.[60] It then is true for *this* matter, it has *recently* come to light OPI and its' counsel, through OPI's employees, was in possession of AGI's BinManager source code.[61] Thus, Defendants' motion for sanctions is substantively improper without pleading a misrepresentation and is therefore, denied. But again finding no bad faith on the part of Plaintiff, and to the contrary, finding itself alarmed by

---

[58] *Coffey*, 1 F.3d at 1104; *Rural Water Dist. No. 4, Douglas Cnty., Kan. v. City of Eudora, Kan*., No. 07-2463-JAR, 2009 WL 1683471, at *2 (D. Kan. June 16, 2009).
[59] ECF No. 202 at 2-3.
[60] ECF No. 194-2 at 3-4; ECF Nos. 194-4 at 3; 194-5 at 3-4.
[61] ECF Nos. 194-4 at 3 & 194-5 at 3-4.

Defendants' demonstrated bad faith with regard to production of the relevant source code in this case, the Court will consider argument from Plaintiff regarding sanctions and will permit any motion practice to commence no later than **October 3, 2025**.

## V.     Outstanding Discovery

Also, during the August 15, 2025 Discovery Conference, the parties raised additional concerns regarding outstanding fact discovery. Plaintiff sought two pieces of outstanding discovery: 1) a forensic examination of Mr. Penrod's personal laptop; and 2) the code relevant to OPI's new "grain management product." After finding that Mr. Penrod's deposition testimony supports the relevance of a forensic examination of his personal laptop, the computer upon which Plaintiff alleged he accessed AGI's source code,[62] the Court ordered a forensic examination of Mr. Penrod's personal laptop occur no later than **September 19, 2025**.

The Court then addressed the issue of OPI's new "grain management product." Plaintiff claims OPI created the "grain management product" using their BinManger source code the Defendants objected to the production by relying on out-of-district and out-of-circuit case law.[63] Defendants argue no duty exists to supplement their discovery responses from the January 2025 requests for the "OPI EPIC" source code to include the now

---

[62] ECF No. 193-2 at ¶¶ 163–167.

[63] *Campos-Eibeck v. C R Bard Inc.*, No. 19-2026-W, 2020 WL 835305, at *5 (S.D. Cal. Feb. 20, 2020); *Our Children's Earth v. Leland Stanford Junior U.*, No. 13-0402-EDL, 2015 WL 12964638, at *2 (N.D. Cal. Oct. 29, 2015); *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, No. 06-3359-JF, 2008 WL 4786671, at *2 (N.D. Cal. Oct. 29, 2008); *Hnot v. Willis Group Holdings Ltd.*, No. 01-6558-GEL, 2006 WL 2381869, at *5 (S.D.N.Y. Aug. 17, 2006); *Kuhns v. City of Allentown*, No. 08-2606, 2010 WL 4236873, at *2 (E.D. Pa. Oct. 26, 2010); *Queer v. Westmoreland Cnty.*, No. 06-325, 2007 WL 2407283, at *3 (W.D. Pa. Aug. 20, 2007), *aff'd*, 296 Fed. Appx. 290 (3d Cir. 2008) (unpublished).

complete "grain management product." Specifically, Defendants made a "grain management" production in January 2025, without objection, that labeled OPI's new "grain management product" and "key grain management functionalities" as a "works in progress." But Plaintiff claims this production was not fully responsive, because Defendants have now released their "OPI EPIQ grain management product" that includes some of the functionalities identified in AGI's trade secret identification statement. And, since it has come to light Mr. Penrod accessed AGI's entire BinManager source code library spanning 5 GB, and he was the lead engineer on the "OPI EPIQ grain management product," Plaintiff needs to conduct a comparison of "OPI EPIQ grain management product" and "AGI's BinManager source code" to truly determine the veracity of their trade secret and unjust enrichment claims.

The Court fully acknowledges the two components of source code discovery relevant to this case: 1) Defendant OPI's source code; and 2) Plaintiff AGI's BinManager Source code. Further, the Court is highly sensitive to the trade secret protections of both parties' source code and entered an Amended Protective Order to that effect (ECF No. 35). But taking these sensitivities into account, the Court orders OPI produce its' source code.

The Court determined Plaintiff's comparison to the "OPI EPIQ grain management product" is relevant and warranted. Taking into consideration case law, presented by Defendants regarding supplementation of disclosures, the law Defendants rely on is not binding on this Court.[64] Equally so, the Court does not find these cases persuasive. The

---

[64] *See Garcia v. Miera,* 817 F.2d 650, 658 (10th Cir.1987) ("But the decisions of one circuit court of appeals are not binding upon another circuit."); *United States v. Doby,* 2019 WL 5825064, at *1

cases cited are factually distinguishable from what occurred in discovery in this case. In the authority relied on by Defendants, courts repeatedly found the defendants had made fully responsive discovery productions and it was the plaintiff who lacked diligence in bringing the discovery issues to the Court.[65] These courts found only good cause shown warrants supplementing discovery responses after the close of discovery.[66] Due to the facts of the record in this case, discussed by the Court ad nauseam, regarding Defendant OPI's incomplete source code productions to date and continued obstruction of source code discovery, the Court rejects Defendants' argument that discovery responses to date are complete and responsive. The Court also finds good cause exists to supplement OPI's source code discovery where Plaintiff was diligent in bringing their source code discovery concerns to the Court. Defendants' objection to the production of the "OPI EPIQ grain management product" is **OVERRULED**.[67] The source code for "OPI EPIQ grain management product" shall be produced no later than **September 19, 2025**.

## VI.    Conclusion

---

(D. Kan. 2019) (explaining this Court is required to follow binding authority from the Tenth Circuit and the Supreme Court).

[65] *See Campos-Eibeck*, 2020 WL 835305, at *5 ("Here, there is no evidence that Defendants' prior disclosures or productions were incomplete or incorrect."); *Our Children's Earth*, 2015 WL 12964638, at *4-5; *Hnot*, 2006 WL 2381869, at *5; *Kuhns*, 2010 WL 4236873, at *2 ("Plaintiffs concede that the City Defendants have already supplemented their discovery beyond the March 25, 2010, discovery deadline, and that they have done so "several times" through late June 2010.").

[66] *See Our Children's Earth*, 2015 WL 12964638, at *1; *Kuhns*, 2010 WL 4236873, at *2.

[67] *See Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1230 (10th Cir. 2001) ("Rodriguez's attempt to characterize the district court's order as a reopening of discovery belies the Federal Rules of Civil Procedure. Rodriguez had a continuing duty to disclose information […] even after discovery closed.").

Plaintiff is permitted to file their Second Amended Complaint and Defendants' objections are overruled. The Court finds any undue delay in bringing the unjust enrichment claim was only caused by Defendants' delay in bringing the relevant facts to this matter, Plaintiff states a plausible and timely claim for unjust enrichment in their Second Amended Complaint, and there was no bad faith on the part of Plaintiff in filing the motion. To the contrary, the Court is alarmed by Defendants' demonstrated bad faith in attempting to place the relevant jump drive, with Plaintiff's source code on it, out of the reach of this Court, thereby obstructing the close of discovery in this matter. The Court further denies Defendants' Motion for Rule 11 Sanctions as substantively improper where it fails to plead a genuine misrepresentation made by Plaintiff. Lastly, the Court finds the outstanding discovery is relevant and responsive to Plaintiff's claims and discovery requests and orders the two outstanding productions be made no later than **September 19, 2025**.

**IT IS SO ORDERED.** Plaintiff's Motion **(ECF No. 193)** is **GRANTED**. Plaintiff shall file the Second Amended Complaint no later than **August 26, 2025**.

**IT IS FURTHER ORDERED.** Defendants' Motion **(ECF No. 200)** is **DENIED**.

**IT IS FURTHER ORDERED.** Any Motion for Sanctions by Plaintiff shall be filed no later than **October 3, 2025**.

**IT IS FURTHER ORDERED.** A forensic examination of Mr. Penrod's personal laptop occur and Defendants produce the source code relevant to OPI's new "grain management product" no later than **September 19, 2025**.

**IT IS SO ORDERED.**

Dated August 21, 2025, at Wichita, Kansas.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge