IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AGI SURETRACK, LLC,

Plaintiff,

v. Case No. 23-2372-JWB

OPISYSTEMS INC., INTEGRIS USA, LLC, SETH TACKETT, and ADAM WEISS,

Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' objections to the magistrate's order (Doc. 215); Defendants' motion to dismiss (Doc. 218); and Plaintiff's motion to strike, or, in the alternative, motion for leave to file surreply (Doc. 231). The motions have been fully briefed and are ripe for decision. (Docs. 220, 223–24, 230.) For the reasons stated, Defendants' objections to the magistrate's order are OVERRULED; Defendants' motion to dismiss is DENIED; and Plaintiff's motion to strike, or, in the alternative, motion for leave to file surreply is DENIED.

## I. Facts

The following facts are taken from Plaintiff's second amended complaint ("SAC"). (Doc. 214.)[1] AGI SureTrack, LLC ("AGI" or "Plaintiff") brings this action against OPISystems Inc. ("OPI"), Integris USA, LLC ("Integris"), Seth Tackett ("Tackett") and Adam Weiss ("Weiss"), (collectively "Defendants"). (*Id*. at 1.) AGI is an agricultural technology company that develops

[1] Because the court holds that the magistrate's order allowing Plaintiff leave to amend its complaint was properly decided, the court uses the SAC to recite the relevant factual allegations. (Doc. 213.) To that end, Defendants' motion to dismiss only seeks dismissal of Plaintiff's unjust enrichment claim. (Doc. 218.) Accordingly, the factual background of this order focuses on that claim.

and sells the BinManager system—a cloud-based software that uses sensors in grain bins to monitor temperature and moisture ("BinManager" or the "source code"). (*Id.* ¶¶ 1-2.) Since 2020, AGI has invested substantial resources in developing BinManager. (*Id.* ¶¶ 5, 55, 66-68, 73, 110.)

BinManager provides remote monitoring and automated control, and the associated software codes are highly confidential and constitute trade secrets critical to AGI's market competitiveness. (*Id.* ¶¶ 43-44.) OPI, a business competitor, recently hired numerous former AGI employees, including Weiss as Chief Technology Officer and Tackett as a salesperson. (*Id.* ¶¶ 6-8, 86-87.) AGI alleges OPI, and its U.S. market affiliate Integris, embarked on a scheme to capture its customers through unlawful theft of trade secrets and confidential information rather than competition and development. (*Id.* ¶¶ 10-11, 85-86.) This action seeks to prevent OPI's misappropriation and enforce employee agreements while seeking damages.

In January 2023, management changes at AGI led to a reduction in force, after which many employees resigned—including Weiss and Tackett. (*Id.* ¶ 49.) Following the reduction, OPI recruiters contacted AGI sales team members, and several employees downloaded customer information and software related to BinManager in preparation for departure. (*Id.* ¶ 50.) Based on that, AGI alleges that OPI has systematically targeted and hired AGI's current and recently terminated employees. (*Id.* ¶ 88.) Many hired employees, including Tackett and Weiss, were intimately familiar with AGI's confidential information, sales and customer data, and BinManager's technical workings.[2] Weiss actively managed the entire engineering team, had hands-on involvement with BinManager software, accessed source code, and improved

[2] AGI has filed lawsuits similar to this one in the Western District of Missouri against former employees alleging non-compete violations and trade secret theft. *See AGI SureTrack v. Andricks, et al.*, Case No. 4:23-cv-00605-RK (W.D. Mo.). That lawsuit has been consolidated with *AGI SureTrack, LLC v. Intellifarms Northern Division*, Case No. 4:23-578-RK (W.D. Mo.) (collectively, the "Missouri Litigation"). The court takes judicial notice of these actions. *See Est. of Holmes by & through Couser v. Somers*, No. 18-1221-JWB, 2021 WL 236080, at *6 (D. Kan. Jan. 25, 2021) (citing *United States v. Ahidley*, 486 F.3d 1184, 1192 n. 5 (10th Cir. 2007) (courts have "discretion to take judicial notice of publicly-filed records . . . concerning matters that bear directly upon the disposition of the case at hand.").

algorithms. He worked directly with Tim Penrod ("Penrod"),[3] the lead BinManager firmware developer, who was involved in all technical projects including development. (*Id.* ¶ 91.)

OPI's hiring of Weiss provided access to confidential and trade secret information enabling development of products with attributes similar to BinManager. Weiss admitted OPI has been and plans to continue developing a product that reads messages from AGI cables and sensors, allowing customer conversion without replacing previously installed AGI hardware. (*Id.* ¶ 92.) OPI developed a proof-of-concept product incorporating BinManager technology within months of Weiss' hiring, which allegedly could not have been done without AGI's confidential information. Weiss has boasted his OPI employment allowed the company to get a product "just like BinManager" to market faster. (*Id.* ¶ 95.)

In April 2023, Weiss and Brett Andricks (former AGI national sales lead and OPI's current head of sales) met twice with AGI's current head of sales to entice him to become an OPI dealer, providing detailed information about OPI's plans to access AGI's cables and hardware. (*Id.* ¶ 96.) When asked how OPI would accomplish this technical connection, Weiss replied, "We have Tim Penrod." (*Id.* ¶ 96.) Further, other OPI representatives have boasted to AGI's customers and dealers about developing "a system just like BinManager." (*Id.* ¶ 97.)

While still employed by AGI, Tackett signed a 1-year non-compete agreement with OPI, and his last day was May 3, 2023. (*Id.* ¶¶ 111-113.) Upon departure, Tackett failed to return documents or materials containing confidential information. Tackett began working for OPI on May 8, 2023, performing sales and specialized tasks nearly identical to his AGI role. (*Id.* ¶¶ 115-116.) Since joining OPI, Tackett has solicited AGI dealers and customers within his former territories to become OPI distributors and has recruited former AGI colleagues to join OPI.

[3] Penrod is a named defendant in *AGI SureTrack, LLC v. Andricks et al.*, Case No. 4:23-cv-605-RK (W.D. Mo.).

Weiss became an AGI employee in March 2019. (*Id.* ¶¶ 120-122.) Throughout his employment, Weiss was bound by confidentiality, non-compete, and non-solicitation agreements. (*Id.* ¶¶ 123-125; *see* Docs. 214-2; 214-3; 214-4.) Weiss had extensive access to confidential information regarding BinManager software and product development plans. (Doc. 214 ¶ 132.) While employed, Weiss forwarded confidential information to his personal email multiple times. (*Id.* ¶ 133.) After notifying AGI of his resignation on December 13, 2021, Weiss requested and received access to confidential technical information about PCB boards, components, suppliers, and costs on January 6, 2022. His last day was January 12, 2022, wherein he failed to return documents or materials containing confidential information. After departure, Weiss personally accessed AGI internal accounts multiple times. (*Id.* ¶ 139.)

Though Weiss worked at another company in a non-violating technical role, he was in communication with OPI by August 2022. (*Id.* ¶¶ 140-141.) Eventually, Weiss joined OPI as a contractor in September 2022, allegedly in violation of his non-compete, and was given a nondescript email address (devcon@opisystems.com). (*Id.* ¶¶ 142-143.) He became Chief Technology Officer of OPI on February 15, 2023, shortly after the non-compete expired, and was promoted to CEO in December 2023. Weiss recruited AGI employees including Penrod and David Duncan, another lead software architect with a non-compete. (*Id.* ¶ 146.) Shortly after Weiss, Tackett, and Penrod joined OPI, the company released two new products directly competing with AGI that allegedly utilize AGI's confidential information. (*Id.* ¶ 149.)

AGI further alleges that OPI misappropriated AGI's confidential BinManager source code. (*Id.* ¶ 155.) Just weeks before leaving AGI in March 2022, Penrod downloaded source code to a flash drive and did not return it after his employment ended. OPI then hired Penrod for firmware development on its BinManager-competitive product—OPI Blue—a product that competes

directly with BinManager. (*Id.* ¶¶ 86, 157.) Penrod possessed AGI's source code when hired by OPI. Specifically, Penrod stored the flash drive in his home office, downloaded the stolen source code to a personal laptop used for early OPI contracting work, and backed up another copy to his Microsoft OneDrive account. (*Id.* ¶¶ 159-160.) Penrod accessed the stolen source code in furtherance of his OPI job duties, including to assist OPI's BinManager integration project at Weiss's request. (*Id.* ¶ 161.) AGI alleges that Weiss knew of Penrod's possession since at least the instant litigation commenced. (*Id.* ¶ 162.) Penrod acquired, possessed, and used AGI's source code in his OPI job duties, and OPI was aware of this possession. (*Id.* ¶¶ 165-170.) OPI and Integris have actively interfered with AGI's customers using AGI's trade secret information that could have only been acquired by AGI's prior employees, including using AGI's proprietary software to generate specifications for OPI product sales.

AGI first filed suit on August 28, 2023. (Doc. 1.) But based on newly discovered facts, AGI filed a motion to amend their complaint on May 12, 2025, seeking to add a claim of unjust enrichment against OPI and Integris. (Doc. 193.) On August 21, 2025, Magistrate Judge Birzer granted AGI's motion to amend. (Doc. 213.) Following this, Plaintiff filed its SAC and Defendants promptly and timely objected to the order and filed a motion to dismiss the SAC. (Docs. 214–215, 218.)

## II. Standards

### A. Objection to Magistrate Judge's Order

Under Fed. R. Civ. P. 72(a), the district court "must consider timely objections [to a magistrate judge's non-dispositive order, as in the instant matter] and modify or set aside any part of the order that is clearly erroneous or is contrary to law." The clearly erroneous standard requires this court to affirm any factual determination by the magistrate judge unless, on the entire evidence,

it is left with the definite and firm conviction that a mistake has been made. *Hale v. Emporia State Univ.*, No. 16-4182-DDC, 2018 WL 1609552, *1 (D. Kan. Apr. 3, 2018) (citation omitted). In assessing the "contrary to law" standard, the district court is permitted to independently review purely legal determinations made by the magistrate judge, and to modify or set them aside if the order "fails to apply or misapplies relevant statutes, case law or rules of procedure." *United States v. Kaeckell*, No. 19-mc-209-DDC, 2019 WL 6486744, at *1 (D. Kan. Dec. 3, 2019). A district court must affirm a magistrate judge's decision unless "on the entire evidence," the district court "is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quotation omitted).

**B. Motion to Dismiss.**

The court will grant a Rule 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face and not just conceivable. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 555); *see also In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). The court construes any reasonable inferences from these facts in favor of the nonmoving party. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

## III. Analysis

Because Defendants seek both to overrule the magistrate's order which granted Plaintiff leave to amend their complaint (Doc. 215) and to dismiss that same amended complaint (Doc. 218), the court must first address Defendants' objections to the magistrate's order.

### A. Defendants' Objections to the Magistrate's Order

Defendants first object to Magistrate Judge Birzer's order granting Plaintiff leave to amend its complaint (Doc. 213 at 5–16), arguing the decision was clearly erroneous and contrary to law[4] (Doc. 215 at 6–9). The court disagrees and affirms the order regarding the grant of leave to amend.

Rule 15 governs amendments to pleadings, which includes complaints. *See* Fed. R. Civ. P. 15(a). "Except when an amendment is pleaded 'as a matter of course,' as defined by the rule, 'a party may amend its pleading only with the opposing party's written consent or the court's leave.'" *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009). Courts "should freely grant leave when justice so requires." *Id*. The rule's purpose "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip*., 451 F.3d 1196, 1204 (10th Cir. 2006) (citation omitted). Therefore, "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Moreover, "[a]fter a scheduling order deadline, a party seeking leave to amend must demonstrate

---

[4] The court notes that despite Defendants' assertion that Magistrate Judge Birzer's order "misapplied the law" (Doc. 215 at 1), Defendants' objections fail to specifically cite any statutes, case law or rules of procedure that were misapplied. *Kaeckell*, 2019 WL 6486744 at *1. Defendants' reply attempts to cure this deficiency by asserting that their objections "plainly lay out the . . . legal misconceptions." (Doc. 223 at 1.) But reciting one's disagreement with factual findings, even emphatically, does not constitute identification of legal error. Instead, Defendants' objections consist almost entirely of a dispute over the factual record. (Doc. 215 at 2-5, 6-9.) This dispute is properly reviewed under the "clearly erroneous" standard, which requires deference be given to the magistrate judge's factual findings. *See Hale*, 2018 WL 1609552 *1.

(1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). However, this good cause requirement may be satisfied "if a plaintiff learns new information through discovery." *Id.*

Here, Magistrate Judge Birzer found good cause existed to grant Plaintiff leave to amend and add a claim of unjust enrichment because Plaintiff learned new information through discovery. Specifically, while taking depositions in March and April of 2025, Plaintiff discovered that a former employee, Penrod, possessed source code since the filing of this litigation—after being repeatedly told by Defendants that neither its employees nor counsel possessed or used that very same source code. (Doc. 193.) Plaintiff began requesting this source code through discovery in December 2023. (Doc. 213 at 2.) Further, Magistrate Judge Birzer found that the proposed amendment was not brought with undue delay, was not futile, did not unduly prejudice Defendants, and was not brought in bad faith. (Doc. 213.) The court agrees.

The crux of Defendants' objections is that Plaintiff had knowledge of or should have known about Penrod's possession of Plaintiff's source code well before the March and April 2025 depositions. (Doc. 215 at 2-5.) These arguments are wholly unsupported by the record and fail to demonstrate clear error. First, Defendants argue that Plaintiff knew Penrod had the source code when he left employment in March 2022. The only evidence Defendants point to is Plaintiff's complaint in the Missouri Litigation where Plaintiff alleges that Penrod did not "return any paper documents or other materials containing AGI SureTrack's confidential and trade secret information." (Doc. 215-1 at 28.) This argument is unpersuasive. The allegation in the Missouri complaint that Penrod failed to return these materials does not establish—nor could it reasonably establish—that Plaintiff knew the specific nature and extent of what Penrod retained. Moreover,

the discovery record in this case demonstrates that Plaintiff has been seeking this source code diligently for years from Defendant. (Doc. 220 at 2-5.) The notion that Plaintiff knew about Penrod's possession of BinManager source code in March 2022 is contradicted by Plaintiff's persistent efforts to discover the code from Defendants.

Defendants also argue that Plaintiff had knowledge that Penrod possessed AGI source code based on his February 1, 2024, discovery response in the Missouri Litigation, in which he stated he was "in possession of old work documents and source code." (Doc. 215 at 2-3, 6.) This argument suffers from multiple deficiencies. Not least of which, Magistrate Judge Birzer found that Plaintiff was repeatedly misled by Defendant's counsel regarding the discovery responses in the instant matter, specifically when OPI repeatedly denied that it nor its employees had any of AGI's source code in its possession or control. (Doc. 213 at 10.) This finding is supported by the record, which shows that OPI responded "None" to multiple discovery requests asking whether OPI and its employees and counsel possessed AGI code. (Docs. 194-2 at 3–4; 194-4 at 3; 194-5 at 3–4.)

Further, Penrod's vague February 2024 reference to "old work documents and source code" cannot reasonably be interpreted as providing Plaintiff with specific knowledge that Penrod possessed a complete, 5GB copy of AGI's BinManager source code library. (Doc. 220 at 15.) Indeed, if this brief statement was so "direct and unambiguous" (Doc. 215 at 6), Defendants fail to explain why Penrod did not actually produce the relevant source code in response to that discovery request until nearly a year later, in January 2025. (Doc. 220 at 12–13.)

Most significantly, even assuming Plaintiff should have inferred from Penrod's February 2024 response that he possessed AGI source code, this says nothing about Defendant OPI's possession, knowledge, and use of that code—which is the basis for the unjust enrichment claim.

(Doc. 214 at 51.) Magistrate Judge Birzer properly found that the "depositions of Mr. Weiss and Penrod . . . gave Plaintiff a sufficient basis to request leave to amend to allege a claim of unjust enrichment against OPI." (Doc. 213 at 9.) This finding is supported by the record because those March and April 2025 depositions revealed that: (1) OPI's CEO knew Penrod had AGI's source code; (2) OPI's counsel had been in possession of the jump drive containing the code "since the beginning of this case"; and (3) Penrod had accessed and used the code while working on an OPI project. (Docs. 203-12; 204-6 at 22:18-25:5). These facts are what support the unjust enrichment claim, and they were only discovered through the March and April 2025 depositions.

Finally, Defendants argue that Plaintiff knew about the source code when it was produced in the Missouri Litigation on January 4, 2025. (Doc. 215 at 6.) But as Plaintiff explains, the files produced on January 4 were corrupted and unreadable. (Doc. 220 9.) This is supported because a replacement production was served by Defendant, but not until February 21, 2025. (*Id.*) And less than a month later, Plaintiff's counsel discovered that this production contained the 5GB of BinManager source code during preparation for Penrod's deposition. In summary, the record as a whole supports Magistrate Judge Birzer's finding that Plaintiff diligently pursued discovery of Defendants' possession of AGI source code and only upon learning the full extent of OPI's possession and use of the code through depositions taken in March and April 2025, did Plaintiff seek leave to amend. Thus, based upon "the entire evidence," the court "is left with the definite and firm conviction that" Magistrate Judge Birzer properly granted Plaintiff leave to amend. *Ocelot Oil Corp*., 847 F.2d at 1464.

In passing, Defendant argues that Plaintiff's unjust enrichment claim is barred by the statute of limitations. (Doc. 215 at 8.) While this defense will be addressed again below when assessing Defendant's motion to dismiss (Doc. 218), at this stage of the litigation, Magistrate Judge

Birzer properly declined to assess when an injury becomes "reasonably ascertainable" as part of an unjust enrichment claim (Doc. 213 at 13). *See Thompson v. Harness*, No. 11-1220-JTM, 2012 WL 2449851, at *4 (D. Kan. June 26, 2012) ("[A] Motion for Leave to Amend is not the appropriate time to determine when [Plaintiff's] alleged injury became reasonably ascertainable."). Thus, Magistrate Judge Birzer's finding was not clearly erroneous.

Defendants next object to the portion of the order denying Defendants' request for Rule 11 sanctions against Plaintiff. (Doc. 215 at 10.) The court again affirms. Defendants originally requested sanctions because of alleged misrepresentations made by Plaintiff. (Doc. 201.) Whether to impose Rule 11 sanctions is committed to the trial court's sound discretion. *Collins v. Daniels*, 916 F.3d 1302, 1319 (10th Cir. 2019). "Rule 11 imposes an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Id*. at 1320 (quotation cleaned up). The court assesses attorney conduct "under a standard of objective reasonableness—whether a reasonable attorney admitted to practice before the district court would file such a document." *Id*. (internal quotation marks and citation omitted). In denying Defendant's Rule 11 sanctions motion, Magistrate Judge Birzer held that the motion was substantively improper because no misrepresentation was actually pled. (Doc. 213 at 17.)

Defendants object on the grounds that Plaintiff made false statements by representing that it recently learned about Penrod's possession of AGI source code. (Doc. 215 at 10.) This objection fails. As previously discussed, the "recent" knowledge Plaintiff referenced was not simply that Penrod (who is not a Defendant in the instant matter) personally had some AGI materials, but that OPI (who is a Defendant) had possessed the code, known about it, and that Penrod had used it in his work for OPI. (Docs. 203-12; 204-6 at 22:18-25:5). These facts were only confirmed through the March and April 2025 depositions. Nevertheless, Defendants' repeated insistence that Plaintiff

should have known about Penrod's possession of source code years ago does not demonstrate that Plaintiff made knowing misrepresentations about what was recently learned regarding OPI's possession and use of the code. In sum, Magistrate Judge Birzer found, and the record aptly supports, that there were "no falsehoods or misrepresentations made by Plaintiff." (Doc. 213 at 17.) Accordingly, Defendants' Rule 11 motion was properly denied.

Finally, Defendants accuse Magistrate Judge Birzer of bias. (Docs. 215 at 6-7, 9, 10-11; 223 at 3-4.) The Court notes at the outset, however, that it is unclear what relief Defendants seek through these allegations—they do not request recusal or any other specific remedy, making their purpose to the court uncertain at best. Regardless, Defendants' bias argument is wholly without merit. Their first allegation is that Magistrate Judge Birzer asked more questions of Defendants' counsel than Plaintiff's counsel in the August 15, 2025, hearing. (Doc. 215 at 10–11.) The court has reviewed the hearing transcript (Doc. 211) and finds no evidence that Magistrate Judge Birzer failed to afford Defendants a fair hearing or that her rulings were the product of bias rather than a careful review of the extensive record before her.

Defendants also suggest bias based on Magistrate Judge Birzer's comments about Defendants' past discovery conduct, including her statement that she was "alarmed by Defendants' demonstrated bad faith in attempting to place the relevant jump drive out of the reach of this Court." (Doc. 213 at 16.) But these comments are findings based on the evidence—that Defendants' counsel transferred previously requested discovery (the jump drive with AGI source code) to the special master in the Missouri Litigation shortly after Plaintiff requested it, having only discovered it thorough the March and April 2025 depositions. (*See* Docs. 194-4 at 3; 194-5 at 3–4; 203-12; 204-6 at 22:18-25:5.) This court agrees that such conduct could be construed as

an attempt to shield evidence from discovery. In any event, Magistrate Judge Birzer describing her concerns with Defendants' discovery conduct does not rise to the level of judicial bias.

In summary, the court finds that Defendants have failed to show that Magistrate Judge Birzer's well-reasoned order was clearly erroneous or contrary to law. Therefore, Defendant's objections are overruled.[5] Having overruled Defendants' objections, the court proceeds to assess Defendants' motion to dismiss (Doc. 218) and Plaintiff's related motion to strike, or, alternatively, motion for leave to file surreply (Doc. 231).

**B. Defendants' Motion to Dismiss**

As a preliminary matter, Plaintiff has filed a motion to strike, or alternatively, motion for leave to file a surreply. (Doc. 231.) Plaintiff seeks to strike Defendants' reply brief or alternatively file a surreply because Defendants raised new arguments in their reply. First, surreplies "are permitted only with leave of court and under 'rare circumstances' after good cause is shown." *James v. Boyd Gaming Corp.*, No. 19-2260-DDC-JPO, 522 F.Supp.3d 892, 902-03 (D. Kan. Mar. 2, 2021) (citations omitted). Second, arguments made for the first time in a reply are generally not considered. *See United States v. Leffler*, 942 F.3d 1192, 1197-98 (10th Cir. 2019) (explaining that arguments made for the first time in a reply brief undermine the adversarial process); *Perez v. City of Cnty. of Denver*, No. 23-1057, 2023 WL 7486461, at *2 n.3 (10th Cir. 2023) (upholding district court's refusal to consider argument made for first time in reply brief). With these precedents in

[5] Defendants argue that because Penrod is a defendant in the Missouri Litigation, that he is not subject to personal jurisdiction and therefore Magistrate Judge Birzer had no jurisdiction to retrieve the jump drive with the relevant source code from the Special Master in the Missouri Litigation and turn it over to Plaintiff. (Doc. 215 at 9.) This argument is waived as it is wholly non-specific because Defendant fails to cite case law, statute, procedural rules, or the record. *See Tunnell v. Gill*, No. 14-3206-DDC-KGS, 2018 WL 4154130, at *1 (D. Kan. Aug. 30, 2018) (holding a proper objection to a magistrate judge's order "must be both timely and specific."). And to the extent it is not waived, this court finds no error in the magistrate judge's management of discovery in this case—as district courts are given wide latitude in controlling and managing discovery during litigation. *See*, *e.g.*, *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1188–89 (10th Cir. 2010); *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 102 (10th Cir. 2012).

mind, the new arguments raised by Defendants in their reply brief will not be considered. Accordingly, Plaintiff's motion to strike, or alternatively, motion for leave to file a surreply is unnecessary and therefore denied.[6]

Defendants argue that Plaintiff's unjust enrichment claim should be dismissed for failing to state a claim under Rule 12(b)(6). Specifically, Defendants argue that the claim is preempted under the Kansas Uniform Trade Secrets Act ("KUTSA") or the Defend Trade Secrets Act ("DTSA"), or alternatively, is barred by the statute of limitations. (Doc. 218.) The court will address these arguments in turn.

First, Defendants argue that AGI's unjust enrichment claim is preempted by the KUTSA. (*Id*. at 4, 6.) Defendants contend that because AGI's claim relates to its allegations of trade secret misappropriation, it is preempted under the plain language of the KUTSA. (*Id*. at 6.) Plaintiff agrees that a claim of unjust enrichment based on property that is determined to be a trade secret is preempted under the KUTSA; however, Plaintiff's unjust enrichment claim presents an alternate theory for relief, that is "to the extent any of the confidential information Defendants took from AGI SureTrack does not rise to the level of a trade secret." (Doc. 224 at 5–6.) Defendants argue in reply that Plaintiff's attempt to re-cast alleged trade secrets as "confidential and proprietary information" is "nothing more than an effort to avoid statutory preemption," as the complaint repeatedly identifies categories that fall squarely within KUTSA's definition of a trade secret. (Doc. 230 at 6.) The court holds Plaintiff's claim is not preempted.

The KUTSA contains a preemption provision stating: "[T]his act displaces conflicting tort, restitutionary and other law of this state providing civil remedies for misappropriation of a trade secret." K.S.A. § 60-3326(a). However, the statute carves out an exception, providing that "[t]his

---

[6] The court notes that even had it considered the new arguments in Defendants' reply as well as Plaintiff's surreply, it would not have changed the outcome of the court's decision. (Docs. 230; 231-1.)

act does not affect . . . other civil remedies that are not based upon misappropriation of a trade secret." *Id*. § 60-3326(b)(2). While the KUTSA provides the exclusive remedy for civil claims that are based on the misappropriation of a statutorily defined trade secret (*see id*. § 60-3320), it does not preempt tort claims that are based on the misappropriation of information falling outside that statutory definition. *LendingTools.com, Inc. v. Bankers' Bank, N.A*., 426 P.3d 538, 546 (Kan. Ct. App. 2018) (unpublished); *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 402-03 (2011) (holding the KUTSA does not prohibit misappropriation of "confidential information" that does not meet the statutory definition of a trade secret.). Thus, whether the KUTSA preempts Plaintiff's claim turns on whether facts have been pled that plausibly state Defendants misappropriated non-trade secrets.

In *LendingTools*, the court explained that plaintiff "pleaded alternative theories of relief," with the primary being misappropriation of trade secrets under KUTSA and alternative theories seeking recovery even if "the jury determines that the information is not a trade secret." 426 P.3d at 547. The court found it "premature" for the lower court to decide the issue of preemption prior to the jury determining whether "the information that [plaintiff] sought to protect met the statutorily [sic] definition of trade secret." *Id*.

Similarly here, Plaintiff's unjust enrichment claim is pleaded as an alternative theory of relief. The SAC alleges that OPI "saved costs it would have expended to acquire similar information through its acquisition, possession, and use of AGI's confidential information." (Doc. 214 ¶¶ 293-294.) Plaintiff refers to "confidential and proprietary information" throughout, and while this may or may not ultimately satisfy the statutory definition of trade secret—such a holding would be premature based on the face of the complaint. *See LendingTools*, 426 P.3d at 547. Taking the well-pleaded facts and reasonable inferences in the light most favorable to Plaintiff, the

court cannot clearly discern that all information at issue necessarily constitutes a trade secret under the KUTSA's definition. *See Archuleta*, 523 F.3d at 1283 (10th Cir. 2008). Whether the information alleged meets the statutory requirements is a factual question that cannot be resolved at this stage of the proceedings. *See Harvey Barnett v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003) ("Trade-secret status is a question of fact."). Plaintiff's claim therefore survives as a permissible alternative theory of relief.

Defendants also argue that AGI's unjust enrichment claim is preempted by the DTSA. (*Id.* at 4, 6.) Defendants provide no support for this assertion and understandably so. The DTSA states that, with a single exception not relevant here, it "shall not be construed to preempt or displace any other remedies, whether civil or criminal, provided by United States Federal [or] State . . . law for the misappropriation of a trade secret." 18 U.S.C. § 1838. The court agrees with Plaintiff that if DTSA expressly states it does not preempt state law misappropriation claims involving trade secrets, it likewise would not preempt state law misappropriation claims involving non-trade secrets. Thus, whether the "confidential and proprietary information" alleged by Plaintiff is a trade secret or not, it is not preempted by the DTSA. (Doc. 214 ¶¶ 293-294.)

Second, Defendants argue that AGI's unjust enrichment claim is barred by the statute of limitations. (Doc. 218 at 7.) Under Kansas law, "unjust enrichment arises when (1) a benefit has been conferred upon the defendant, (2) the defendant retains the benefit, and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Est. of Draper v. Bank of Am., N.A.*, 205 P.3d 698, 706 (Kan. 2009) (citing *In re Est. of Sauder*, 156 P.3d 1204, 1220 (Kan. 2007)). A "statute of limitations defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) (internal quotation marks

omitted). Stated another way, the "court may grant a motion to dismiss based on a statute of limitations defense only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022) (internal quotation marks omitted).

In the current matter, the parties dispute whether a two- or three-year statute of limitations applies to an unjust enrichment claim under Kansas law. (Docs. 218 at 7; 224 at 11.) However, the court need not resolve this dispute[7] because even applying the shorter two-year period, Plaintiff's claim is timely. Thus, the court must first determine when the unjust enrichment claim was brought for statute of limitations analysis. Here, the claim was brought on May 12, 2025, when Plaintiff filed its motion seeking leave to amend. (Doc. 193.) This is because a claim brought in an amended complaint is considered to have been brought on the date the motion to amend was filed. *See Kwang I. Lee v. City of Leawood, Kansas*, No. 08-2242-KHV, 2009 WL 2106104, at *3 (D. Kan. July 16, 2009) (noting "an amended complaint is deemed filed on the date plaintiff seeks leave to amend") (citing *Wallace v. Sherwin Williams Co., Inc.*, 720 F. Supp. 158, 159 (D. Kan. 1988) ("[P]laintiff's amended complaint was effectively filed when his motion for leave to file an amended complaint was filed.")).

The question therefore becomes whether all three elements of unjust enrichment were present before May 12, 2023—two years prior to the filing of Plaintiff's motion to amend. To answer that question, the court must determine when the underlying claim accrued. "The statute of limitations begins to run when all of the[] elements [for an unjust enrichment claim] are

[7] *Compare Murray v. Miracorp, Inc.*, 318 Kan. 615, 623, 545 P.3d 1009, 1015 (2024) (holding a group of claims, including unjust enrichment, as subject to a two-year statute of limitations) *with Black v. Union Pac. R.R. Co.*, No. 23-CV-1218-EFM, 2024 WL 1604620, at *11 (D. Kan. Apr. 12, 2024) (holding that an unjust enrichment claim is properly characterized as an implied contract claim that is subject to a three-year statute of limitations).

present." *Est. of Draper*, 205 P.3d at 706. In other words, an unjust enrichment claim first accrues at "the earliest time the plaintiff had a right to maintain a legal action." *Id*. at 715.

Here, the alleged benefit that OPI received was Penrod's improper acquisition and use of AGI's BinManager source code "in the scope of his job duties as an OPI employee." (Doc. 214 ¶ 165.) And at this stage of the proceeding, the question of when OPI came to learn about Penrod's possession of the BinManager source code is answered by looking to the SAC. *See Herrera*, 32 F.4th at 991. The SAC alleges that Mr. Weiss, OPI's current CEO, knew that Penrod improperly possessed the source code "since at least the outset of this litigation," which commenced on August 28, 2023, upon the filing of the original complaint. (Doc. 214 ¶ 162; *see* Doc. 1.) Thus, Plaintiff's SAC alleges that the earliest all elements of the unjust enrichment claim were present—that is, when the benefit (access to the BinManager source code) was conferred upon the defendant, OPI—was not until August 28, 2023. And the motion to amend was filed well within two years of that date. (Doc. 193.) While, as Defendants argue, it is plausible that the elements for an unjust enrichment claim were present prior to this date, Defendants have not pointed to facts in the complaint that clearly indicate "the right sued upon has been extinguished." *Sierra Club*, 816 F.3d at 671. Accordingly, Plaintiff's allegations demonstrate that its unjust enrichment claim was brought within the shorter of the two statutes of limitations.

**IV. Conclusion**

Defendants' objections to the magistrate's order (Doc. 215) are OVERRULED; Defendants' motion to dismiss (Doc. 218) is DENIED; and Plaintiff's motion to strike, or, in the alternative, motion for leave to file surreply (Doc. 231) is DENIED.

IT IS SO ORDERED. Dated this 28th day of January, 2026.

_s/ John W. Broomes__________________
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE