**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| AGI SURETRACK, LLC, <br><br> Plaintiff, <br><br> v. <br><br> OPISYSTEMS INC., INTEGRIS USA, LLC, SETH TACKETT, and ADAM WEISS, <br><br> Defendants. | Case No. 23-2372-HLT-GEB |

**ORDER AND REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff's Motion for Sanctions (ECF No. 232). Parties, per D. Kan. R. 7.2, provided oral argument to the Court in order to assist in the Court's resolution of the Motion. The Motion for Sanctions is now fully briefed and argued. After reviewing all briefing and oral argument, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion **(ECF No. 232)**. The Court further **RECOMMENDS GRANTING in part** Plaintiff's Motion **(ECF No. 232)** so far as it requests an adverse inference of spoliation. The Court further considers Plaintiff's Notice of Supplemental Authority (ECF No. 278) and Defendant's Motion to Strike the Notice (ECF No. 283). After discussion during the Pretrial Conference and review of the parties' briefing, the Court **DENIES** the Motion to Strike **(ECF No. 283)** and considers the supplemental authority in resolution of the Motion for Sanctions.

1

## I.    Background[1]

This case seeks to prevent what AGI SureTrack, LLC alleges to be OPISystems, Inc.'s misappropriation of its' trade secrets, and to enforce AGI SureTrack, LLC's employee agreements while seeking damages. Defendants in this case include, Seth Tacket, Adam Weiss, OPISystems, Inc., and Integris, USA, LLC. For purposes of the recommendation herein on the Motion for Sanctions, the applicable Defendant to be sanctioned is OPISystems, Inc.

### a)    The Parties

Plaintiff, AGI SureTrack, LLC ("AGI") is an agricultural technology company that develops and sells a BinManager system, which is a grain-storage system with cloud-based software and hardware, such as sensors, cables, and controls, used to monitor temperature and moisture in grain bins ("BinManager"). BinManager has remote monitoring and automated control that maintain grain quality. AGI contends, since 2020, it has invested substantial resources in developing BinManager. The associated software codes for the system are highly confidential and constitute trade secrets critical to AGI's market competitiveness.

Defendant, OPISystems, Inc. ("OPI"), acknowledges it is AGI's direct business competitor. OPI currently distributes products known as OPI Blue, OPI Blue-Lite, and, at least partially, OPI EPIQ, which it advertises as its' next-generation grain bin management

---

[1] Unless otherwise indicated, the information recited in this section is taken from the Second Amended Complaint (ECF No. 214); the Pretrial Order (ECF No. 284); or the electronic docket for this matter. This background information should not be construed as judicial findings or factual determinations.

product. In April 2023, OPI hired several former AGI employees, including Defendant Adam Weiss (AGI's former VP of Global Technology and Controls) as their Chief Technology Officer and Defendant Seth Tackett (AGI's former Sales Execution Manager) as a salesperson. AGI alleges OPI, and its' U.S. market affiliate Integris USA, LLC (collectively, "OPI"), embarked on a scheme to capture its' customers through unlawful theft of trade secrets and confidential information rather than above board competition and development.

**b)      The Dispute**

Factually, AGI contends Defendant Weiss has admitted OPI has been, and plans to continue, developing a product that reads messages from AGI's BinManager cables and sensors, and allows customer conversion to OPI's software without replacing previously installed AGI hardware in their grain bins. OPI contends these efforts, if true, are not an attempt at misappropriation. Rather, it amounts to legitimate reverse engineering efforts of AGI's software. But AGI contends OPI developed a proof-of-concept product by incorporating AGI's BinManager technology within months of hiring Defendant Weiss which, according to AGI, could not have been done without inside knowledge and usurping AGI's confidential BinManager code.

Specifically, AGI's former employee, Timothy Penrod (the former software engineer who designed AGI's BinManager hardware and firmware) ("Mr. Penrod"), stored a flash drive in his home office, downloaded AGI's source code to a personal laptop he was using for his contracting work with OPI, and he backed up another copy to his Microsoft OneDrive account without AGI's permission. AGI then contends Mr. Penrod stole and

3

accessed the source code in furtherance of his OPI job duties, including to assist OPI's BinManager integration project at Defendant Weiss's request. AGI further alleges Defendant Weiss knew of Mr. Penrod's possession of AGI's BinManager code since the inception of this litigation. And, because of Defendant Weiss's knowledge, of Mr. Penrod's acquisition, possession, and use of AGI's source code in the course of his OPI job duties, OPI was aware, or at the least should have been aware of this possession, having hired Mr. Penrod for the very purpose of reverse engineering BinManager source code. Defendant OPI misappropriated AGI's trade secrets through this scheme, and AGI seeks to enforce its' employee agreements and federal and state trade secret laws, seeking damages including lost profits and other equitable relief.

c)    **Discovery Record**

The matter is clearly a weighty dispute between direct business competitors in a niche market, as evidenced by the discovery process in this matter spanning over two years which began during a December 6, 2023 Scheduling Conference. During that initial conference AGI began requesting, including through the propounding of formal discovery requests, the source code relevant to this litigation in Defendants' possession. The Court is clear there are two relevant and separate source codes at issue in this litigation: 1) OPI EPIQ/Blue which represents Defendant OPI's current and developing source code for their competitive products; and 2) AGI's BinManager code Plaintiff contends was misappropriated and Defendants claim to have attempted to reverse engineer (together, "source code").

4

### i)      OPI EPIQ Source Code Discovery

Through efforts at informal and formal dispute resolution, and ultimately motion practice, the parties made little progress in discovery in 2024 due to lengthy disputes over OPI's source code production. The Court held a Status Conference on August 21, 2024 for the purpose of confirming whether the parties were adhering to the case schedule. The August 2024 status conference is the first time Defendants' production of their own source code modules for comparison to AGI's BinManager source code and the pathways to the creation of OPI EPIQ was raised. Based on relevance, Defendants were ordered to produce their own software discovery by the close of business on August 23, 2024, and expert deadlines were enlarged. But on the date Defendants were first ordered to produce their source code, they objected to the Court's August 21, 2024 order for production.

District Judge Holly Teeter then held a Motion Hearing on September 13, 2024 taking up Defendants' objection. During that hearing, Judge Teeter sustained Defendants' objections to the August 2024 Order and vacated the Order for software production.[2] However, upon review of the transcript of the hearing, Judge Teeter demonstrated the Court's struggle with narrowing discovery to the specific portions of Defendants' source code the former AGI employees potentially interacted with while working for OPI.[3] And the Court ultimately concluded Plaintiff needed to narrow the parameters for Defendants'

---

[2] ECF No. 115.
[3] ECF No. 126 at 20-21.

source code at issue in the litigation. Yet, Judge Teeter made it clear at that time "some source code is going to be produced."[4]

So, on November 25, 2024, the Court issued a Notice (ECF No. 138) ordering Defendants to begin a rolling production of the outstanding source code discovery. Defendants neither made any rolling productions, nor did there appear to be any attempt to do so. Then, during a December 3, 2024 Discovery Conference, the Court denied Defendants' Motion to Stay the case, and again amended the parties current schedule, including extending the formal discovery deadlines. The Court further ordered Defendants to respond to Plaintiff's First Set of Interrogatories and Requests for Production, propounded in October 2024, as well as ordered Defendants again to produce relevant source code discovery, this time under peril of sanction(s), if Defendants did not comply with production of the applicable source code by December 17, 2024 (ECF No. 143). The Court expressly found the comparison of Defendants' and Plaintiff's source code relevant to the broad nature of the discovery process in order for parties to narrow down what source code, if any, may have been misappropriated from Plaintiff's system. Defendants were directed to bring any new objections to the source code discovery requests to the Court's attention immediately. And the Court, in an effort to garner cooperation by the Defendants, strongly encouraged compliance by warning each Defendant they would be subject to a sanction of $1,000 per day past the December 17th deadline until source code discovery was produced (ECF No. 144 at 7).

---

[4] ECF No. 126 at 8.

Immediately thereafter, Defendants seemingly made an effort at compliance, by working with Plaintiff to produce *some* source code discovery, and Defendants served their responses and objections on December 18, 2024. As ordered, the parties submitted a Joint Status Report to the Court on December 20, 2024 identifying additional outstanding discovery, which included source code discovery for OPI EPIQ, that had yet to be produced. Notably, Plaintiff was seeking, in December 2024, a complete production of OPI EPIQ in accordance with Plaintiff's RFP No. 8, requesting "any code module" former AGI employees had any "input, commentary, or other review capacity on since September 12, 2022," which was originally propounded on October 18, 2024.

On January 15, 2025, the Court held another Discovery Conference with the parties and again ordered production of the outstanding discovery, including Defendant OPI's source code discovery relevant to this case, and found good cause existed to amend the schedule to allow time for production. The Court expressly ordered the relevant code module for OPI EPIQ be produced no later than January 24, 2025 (ECF No. 157). In order to assure the necessary progress in written discovery, the Court scheduled weekly discovery conferences every Friday during the month of February 2025. During these conferences, the Court took up the production of: 1) a Legal Summary document, again over Defendants' objections; 2) the sufficiency of Plaintiff's trade secret disclosures, ultimately finding them specific enough for Defendants to make adequate productions; and 3) ordered the scheduling of depositions up to what was designated to be the end of fact discovery.

However, during a March 18, 2025 fact deposition of witness Mr. Sandeman, who was believed to be Defendant OPI's employee, progress in fact discovery again halted

7

when Mr. Sandeman failed to appear for a deposition on the scheduled date. All counsel and deposition staff appeared at the scheduled time. It was only at that time that OPI's counsel advised all present for deposition that Mr. Sandeman was no longer employed at OPI, claiming a miscommunication of sorts. Two days later, the Court convened the parties to address this dispute, heard argument, and allowed Plaintiff to file a Motion for Sanctions for Defendant OPI's' deposition conduct. The parties ultimately avoided Court intervention regarding Plaintiff's first potential Motion for Sanctions after agreeing through conferral with Defendants on costs. The Court's focus then shifted to discovery related to AGI's BinManager code.

### ii)    BinManager Source Code Discovery

During a March 2025 Discovery Hearing, Plaintiff informed the Court they recently discovered, through their 30(b)(6) deposition of Defendant Weiss and OPISystems, confirmation that Mr. Penrod, a witness in this case, and former employee of AGI, was in fact in possession of AGI's BinManager source code during his employment at Defendant OPI. Upon review of Defendant OPI's written discovery responses, even to date, OPI's written discovery responses indicate otherwise.[5] But Plaintiff diligently pursued these newly discovered facts, and at that time factual discovery disputes largely centered on finding AGI's BinManager source code. Such disputes remained ongoing into April 2025. On April 7, 2025, Plaintiff contacted the Court over a dispute with Defense counsel regarding the timing of Defendant OPI's disclosures surrounding Mr. Penrod's possession

---

[5] ECF Nos. 194-4 at 3 & 194-5 at 3-4.

of AGI's own source code during his employment at OPI, and requesting the jump drive

Defendants testified at deposition Mr. Penrod had turned over to Defense counsel, with the

"stolen"[6] code.

After Plaintiff requested a conference regarding the jump drive Mr. Penrod

possessed when he began employment at OPI, and they reasonably believed to contain

BinManager code, Defendants' counsel subsequently included the physical jump drive in

question in an April 9, 2025 letter to the Special Master managing Case No. 23-578-RK,[7]

a pending  companion case in the Western District of Missouri ("WDMO case"), for "safe

keeping."[8] Defense counsel represented OPI's former and then current counsel had been in

possession of the jump drive containing the code "since the beginning of this case." On

April 15, 2025, the Court reviewed position statements from the parties raising alarms

about when the fact of the jump drive was disclosed to Plaintiff through teeth pulling

discovery in this matter versus when Defendants' assert Plaintiff was made aware of the

fact through discovery responses in the WDMO case. Mr. Penrod, a witness in this case, is

a Defendant in the WDMO case. Plaintiff's pointed to their discovery requests from

December 2024, expressly requesting all source code in OPI's possession, which clearly

---

[6] Plaintiff's Second Amended Complaint uses the term "stolen" in reference to the BinManager source code in Mr. Penrod's possession. ECF No. 195 at 9.

[7] On November 1, 2024, eleven months after the start of discovery in this case, Defendants filed a Motion to Consolidate with the Judicial Panel on Multi-District Litigation requesting this action be consolidated with the companion action pending in the Western District of Missouri. ECF No. 133 at 1. On February, 7, 2025, the Judicial Panel on Multi-District Litigation denied Defendants' Motion to centralize these actions. Case MDL No. 3135, ECF No. 24. The actions remain separate and in separate district courts.

[8] ECF No. 203-14.

included counsel in its' definitions.[9] OPI argued the possession of old code, and by virtue

the jump drive and source code discovery, was always available to Plaintiff's counsel

through diligent discovery in the WDMO case, albeit subject to the protective order entered

in that case. The Court, having already found the jump drive and its' contents extremely

relevant to discovery in this litigation, expressed such relevance directly to the WDMO

Special Master, and in the management of discovery, after several months, retrieved and

delivered the jump drive purportedly containing the source code discovery to Plaintiff

during an August 2025 Discovery Hearing.

### iii)    Amendment to Present

Per the Court's Order on August 21, 2025, AGI, upon motion, was granted leave to

amend its' complaint to add a claim for unjust enrichment against OPI, partially based on

the fact that the jump drive, containing Plaintiff's relevant source code, had been provided,

reviewed, and evidence was discovered to support adding the proposed claim. Also, the

Court's Order permitted Plaintiff to file a Motion for Sanctions by October 3, 2025 based

on OPI's egregious conduct during discovery and its' complete lack of production by

attempting to place the jump drive outside of the jurisdiction of this Court. OPI was further

ordered to produce the source code relevant to OPI's new "grain management product" no

later than September 19, 2025 (ECF No. 213). Defendants appealed that Order to District

---

[9] ECF Nos. 194-2 at 3 & 194-3 at 4 ("'You,' 'Your,' or 'Defendant' shall mean, separately and collectively, Defendant OPISystems Inc. and Integris USA, LLC, as well as all subsidiaries, parent entities, predecessor or successor companies, any and all divisions thereof, and any and all present and former officers, directors, representatives, shareholders, agents, employees, attorneys (both inhouse and outside counsel), accountants, investigators, or any other person, affiliate, or agent acting on their behalf, including, but not limited to, Adam Weiss and Seth Tackett").

Judge Broomes who on January 28, 2026 issued an order denying their objection and permitting the Second Amended Complaint to stand.[10] Judge Broomes affirmed the factual record in discovery to date, specifically finding OPI repeatedly denied that it, its' employees, or counsel had any of AGI's source code in their possession or control when OPI responded "None" to multiple discovery requests asking the same, and its' counsel did possess AGI code.[11] Judge Broomes further found the discovery record demonstrates Plaintiff has been seeking the relevant source code for years and the new unjust enrichment claim is factually supported where: "(1) OPI's CEO knew Penrod had AGI's source code; (2) OPI's counsel had been in possession of the jump drive containing the code 'since the beginning of this case'; and (3) Penrod had accessed and used the code while working on an OPI project."[12]

After a September 23, 2025 Discovery Hearing, the Court extended Plaintiff's deadline to file the Motion for Sanctions in order to allow additional time for review of a forensic imaging and expert report. Plaintiff ultimately filed the instant Motion for Sanctions on October 24, 2026. Oral argument on the Motion was extended to February 5, 2026 due to additional discovery disputes over the timing of expert disclosures and depositions pursuant to Fed. R. Civ. P. 30(b).

The Court held the oral argument for the instant Motion on February 5, 2026, and discovery closed on March 20, 2026. After the close of discovery and expert depositions,

---

[10] ECF No. 271.
[11] ECF Nos. 194-2 at 3–4; 194-4 at 3; 194-5 at 3–4.
[12] ECF No. 271 at 10 (citing ECF Nos. 203-12; 204-6 at 22:18-25:5).

on March 20, 2026, Plaintiff filed a Notice of Supplemental Authority (ECF No. 278). The notice provided excerpts of Defendants' expert, Douglas Miller's deposition testimony where he acknowledged certain admittedly relevant materials relating to a "material prototype" "no longer exists."[13] Mr. Miller testified the destroyed materials, source code and pathways, were destroyed around the time this lawsuit was filed, August 2023.[14]

On April 2, 2026 Defendants moved to strike this supplemental authority as an improper sur-reply (ECF No. 283). The Court held the Initial Pretrial Conference in this matter on April 3, 2026 with brief oral argument on Defendants' Motion to Strike. The Pretrial Order in the matter was entered that same day and is now the operative pleading in the matter. Since the filing of the instant Motion, both parties have filed dispositive motions with accompanying memoranda and exhibits pursuant to Fed. R. Civ. P. 56 and motions seeking to exclude expert testimony of experts designated in this case: Matthew Eshleman, Jocelyn Sum, Mr. Frye, and Dr. Mattson (ECF Nos. 291, 294, 296, 298, and 301). No motions were filed to exclude Defendants' expert, Douglas Miller's expert testimony. The Motion to Strike and Motion for Sanctions are now ripe for the Court's determination.

## II.    Motion to Strike (ECF No. 283)

Prior to a discussion on the Motion for Sanctions, the Court believes it is relevant to first consider what evidence, if any, should be considered with the Motion. Here, Defendants filed a Motion to Strike (ECF No. 283) Plaintiff's Second Notice of Supplemental Information in Support of its' Motion for Sanctions (ECF No. 278)

---

[13] ECF No. 279-1 at 6-9.
[14] ECF No. 279-1 at 36 -40, 46-52, and 53-57.

("Supplement"). Plaintiff's Supplement includes excerpts of testimony from Defendants' expert, Douglas Miller's deposition testimony. Defendants argue these excerpts should be stricken because they do not qualify as supplemental authority and the excerpts do not qualify for the rare circumstances justifying a sur-reply, making the expert testimony evidence inadmissible. Plaintiff, on the other hand, contends Defendants cannot simultaneously use the benefits of their expert's testimony to proceed to dispositive and pretrial motions in the matter, while also shielding the relevant testimony for the still pending Motion for Sanctions from the Court's consideration. In support, Plaintiff represents Douglas Miller's testimony provides essential information to the Motion for Sanctions and qualifies as relevant supplemental authority for the Court to consider with the Motion. In the alternative, AGI requests the Court consider the filing as a sur-reply meeting the conditions of the rare circumstances one can file with leave of Court. The Court briefly heard oral argument on the Motion at the March 2026 Pretrial Conference, articulating its' sur-reply concerns. AGI responded to those concerns at conference and offered to file a written response brief on the supplementation, which the undersigned permitted by setting an accelerated briefing schedule.

After consideration of the parties' briefing and oral argument on this Motion, the Court maintains its' initial position this Supplement is not a sur-reply. Sur-replies are filed under rare circumstance *with leave of Court*.[15] No leave was requested or granted to

---

[15] *Mack v. J.M. Smuckers Co.*, 631 F. Supp. 3d 1018, 1022 (D. Kan. 2022), *aff'd*, No. 22-3195, 2023 WL 5217705 (10th Cir. Aug. 15, 2023) ("Sur-replies are permitted only with leave of the court which is rarely given.") (citing *James v. Boyd Gaming Corporation*, 522 F. Supp.3d 892, 902-03 (D. Kan. 2021); *Taylor v. Sebelius*, 350 F. Supp. 2d 888, 900 (D. Kan. 2004)).

Plaintiff here. Therefore, AGI cannot establish retroactively that Mr. Miller's testimony constitutes a rare circumstance for a sur-reply. AGI should have requested leave of Court. The Court thus declines to consider the Supplement as a sur-reply without leave of Court.

However, the Court does consider Mr. Miller's deposition testimony to be new information, relevant to the motion requesting sanctions, which arose after the briefing and oral argument for the sanctions motion had closed. Thus, the Court finds the excerpts from Mr. Millers testimony are properly considered by the Court in this regard. Good cause may exist for supplement when the proffered supplemental authority controls the outcome of the litigation, or when the proffered supplemental authority is precedential, or particularly persuasive or helpful."[16] In instances, like a summary judgment motion, when a party does not support an assertion of fact with a citation, Fed. R. Civ. P. 56(e) permits the party to properly support the fact through supplementation.[17] AGI contends this is a similar situation as the summary judgment motion in *Welton v. AMCO Ins. Co.*, 180 F. Supp. 3d 825, 827 (D. Kan. 2016), where Plaintiff discovered deposition testimony from Defendants' expert after briefing on the motion had closed, and the new information presented could have aided the Court in its' decision on the still pending motion. Supplementation without leave is not a practice the Court wishes to encourage in parties. But particularly where a Motion for Sanctions per Fed R. Civ. P. 37(e)(2) does require evidence of spoliation, similar to an evidentiary requirement in a Motion for Summary

---

[16] *See Alps Prop. & Cas. Ins. Co. v. Kalicki Collier, LLP*, 526 F. Supp. 3d 805, 812 (D. Nev. 2021); *Greer v. Freemantle Productions*, 622 F. Supp. 3d 1010, 1014–15 (D. Nev. 2022).
[17] *Welton v. AMCO Ins. Co.*, 180 F. Supp. 3d 825, 827 (D. Kan. 2016).

14

Judgment, the Court does see the situations as similar.[18] The Court also finds the filing here is, in fact, relevant supplemental authority to AGI's Motion for Sanctions, where it provides support for the Court's necessary findings of prejudice and bad faith to AGI for imposing sanctions pursuant to Fed. R. Civ. P. 37(e)(2). So, while the discovery record to date supports the recommended sanctions, the Court further considers AGI's Supplement (ECF No. 278), Defendants' Motion to Strike (ECF No. 283), and all briefing on the Motion for Sanctions, as part of the record that governs this motion. Defendants' Motion to Strike **(ECF No. 283) is DENIED**.

### III.   Motion for Sanctions (ECF No. 232)

Having determined the excerpts of testimony from Defendants' expert, Douglas Miller's deposition testimony should be considered in AGI's Motion for Sanctions, the Court turns to its' analysis of the Motion. The Court previously clarified it recognizes there are two relevant and separate categories of source code germane to this matter: 1) AGI's BinManager code they allege the Defendants attempted to reverse engineer; and 2) OPI EPIQ which represents Defendant OPI's source code for their developing competitive product. But, this distinction is less relevant to resolution of this Motion where the Court considers both Defendants' conduct in production of AGI's source code, and their own source code modules, to have violated discovery orders and warrant sanction. The Court finds, when it comes to considering spoliation sanctions, all source code information

---

[18] *Fed. Trade Comm'n v. Affiliate Strategies, Inc.,* No. 09-4104-JAR, 2010 WL 11470100, at *6 (D. Kan. Oct. 26, 2010) (citing *In re Krause*, 367 B.R. 740, 764 (Bankr. D. Kan.2007) *aff'd*, No. 08-1132, 2009 WL 5064348 (D. Kan. Dec. 16, 2009), *aff'd*, 637 F.3d 1160 (10th Cir. 2011)) ("The moving party has the burden to demonstrate spoliation by a preponderance of the evidence").

produced in this case is relevant in considering whether the evidence of the extent of Defendants' misappropriation of AGI's BinManager code and reverse engineering efforts have been destroyed in bad faith.

### a)    Plaintiff's Position

Plaintiff filed this Motion for Sanctions *after* the completion of the Court ordered forensic search of the relevant jump drive and Mr. Penrod's laptop ordered during the August 2025 hearing. Plaintiff contends the forensic search of the jump drive and Mr. Penrod's laptop reveal AGI's source code was accessed on the laptop twice in 2023 and once in 2024.[19] AGI also  contends the forensic search of the jump drive and the laptop revealed: 1) OPI had critical evidence on the jump drive and Penrod's laptop and did not preserve it at the outset of this case, 2) the jump drive had not been in the possession of counsel from the start of this case, and 3) despite clear orders for two years to produce AGI's source code, nearly 170,000 files were not produced in the January 2025 production of Penrod Vol. 4, as ordered.[20] AGI only found these files on the jump drive, finally produced in August 2025. And it revealed further instances of BinManager code stolen from AGI by Defendants.[21]

Plaintiff argues OPI's discovery conduct leading to this late disclosure is so egregious it has foreclosed their ability to fully prove their unjust enrichment claim, where the full extent of Defendants' misappropriation of AGI's source code can now never be

---

[19] ECF No. 233-1 at 4 & 9, *sealed.*
[20] ECF No. 233-2 at 14, *sealed.*
[21] ECF No. 233-1 at 4, 10 & 15, *sealed.*

found and has been spoiled due to Defendants' purposeful delay in producing the code. The Supplement Plaintiff provides supports the same conclusion. Plaintiff advocates where Defendants have foreclosed the possibility of resolving their unjust enrichment claim fully on the merits, the extreme sanctions of: 1) a finding of fact under Fed. R. Civ. P. 37(b)(2); 2) an adverse inference under Fed. R. Civ. P. 37(e)(2), and/or 3) all reasonable fees per Fed. R. Civ. P. 37(b)(2) are warranted.[22]

### a)    Defendants' Position

Defendants contend: 1) they have timely complied with all discovery orders and Plaintiff has not timely objected under Rule 37 if they are missing AGI or OPI code; 2) they produced the AGI code and the code for OPI Blue, just not all of the OPI EPIQ source code developed past the start of the litigation, maintaining their objection that source code made past the start of litigation is not relevant to the case; and 3) Plaintiff cannot prove spoliation of evidence where Mr. Penrod had no obligation to preserve evidence for this litigation and Defendant OPI never had possession of the laptop or the jump drive.

### IV.    Analysis for Sanctions

The Court has authority under Fed. R. Civ. P. 16(f) and 37 (b)(2) to sanction a party who fails to participate in discovery or comply with court orders. The Court also has inherent authority to sanction a party whose behavior impedes the orderly and expeditious functioning of the judicial process.[23] District Courts have "very broad discretion to use

---

[22] *Lee v. Max Intern., LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011); *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920–21 (10th Cir. 1992) (citing factors as articulated in *Am. Power Chassis, Inc. v. Jones*, No. CV 13-4134-KHV, 2018 WL 4409434, at *8 (D. Kan. Sept. 17, 2018)).
[23] *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017).

sanctions where necessary to insure ... that lawyers and parties ... fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial."[24]

The Court further has discretion regarding the imposition of discovery sanctions under Rule 37.[25] That discretion is limited by the provisions of Rule 37 which requires "any sanction be both 'just' and 'related to the particular 'claim' which was at issue in the order to provide discovery.'"[26] "Sanctions under Rule 37 are intended to ensure that a party does not benefit from its failure to comply, and to deter those who might be tempted to such conduct in the absence of such a deterrent."[27] A court should order "the least severe available sanction that will adequately deter and punish the wrongdoer and consider the purposes to be served by the imposition of sanctions."[28] "[T]he court must consider on a case-by-case basis whether a party's failure was substantially justified or whether other circumstances make the imposition of sanctions inappropriate."[29]

a)   **Fed. R. Civ. P 37(b)(2)**

Plaintiff initially seeks sanctions under Fed. R. Civ. P 37(b)(2) for failure to abide by the Court's discovery orders. The Court recognizes that Fed. R. Civ. P. 37(b)(2) provides

---

[24] *AKH Co., Inc. v. Universal Underwriters Ins. Co.*, No. 13-2003-JAR, 2016 WL 187995, at *3 (D. Kan. Jan. 14, 2016). *See also In re Baker*, 744 F.2d 1438, 1440 (10th Cir.1984) (en banc).

[25] *Roadbuilders Mach. & Supply Co. v. Sandvik Mining & Constr. USA, LLC,* No. 22-2331-HLT, 2024 WL 68366, at *8 (D. Kan. Jan. 5, 2024), *reconsideration denied*, No. 22-2331-HLT, 2024 WL 757154 (D. Kan. Feb. 23, 2024) (citing *Lee v. Max Int'l, LLC,* 638 F.3d 1318, 1320-21 (10th Cir. 2011)).

[26] *Id.* (citing *Ehrenhaus,* 965 F.2d at 920).

[27] *Kindergartners Count, Inc. v. DeMoulin, 209 F.R.D. 466, 468* (D. Kan. 2002) (quoting *Starbrite Waterproofing Co., Inc. v. AIM Const. & Contracting Corp.*, 164 F.R.D. 378, 381 (S.D.N.Y. 1996)).

[28] *Roadbuilders Mach. & Supply Co.*, 2024 WL 68366, at *8 (citing *White v. Gen. Motors Corp.*, 908 F.2d 675, 684 (10th Cir. 1990)).

[29] *Id.* (citing *In re Indep. Serv. Orgs. Antitrust Litig.*, 85 F. Supp. 2d 1130, 1161–62 (D. Kan. 2000)).

the Court may sanction a party who fails to obey a discovery order by: 1) "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;" 2) "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;" or 3) "treating as contempt of court the failure to obey any order." Fed. R. Civ. P. 37(b)(2)(C) provides for the payment of reasonable expenses in addition to or instead of the sanctions permitted in Rule 37(b)(2)(A). "[T]he court must order the disobedient party…to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."[30] However, any such sanction "should always be measured, proportionate, and in the interests of justice."[31]

Plaintiff argues based on Defendants' failure to abide by source code discovery orders to date, the appropriate sanction is a finding of fact concerning Defendant OPI's misappropriation of Plaintiff's source code and employs the factors in *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920–21 (10th Cir. 1992) as articulated in *Am. Power Chassis, Inc. v. Jones*, No. CV 13-4134-KHV, 2018 WL 4409434, at *8 (D. Kan. Sept. 17, 2018) in considering dismissal as a just sanction. These factors include: (1) the degree of actual prejudice to plaintiff; (2) the amount of interference with the judicial process; (3) the

---

[30] Fed. R. Civ. P. 37(b)(2)(C).

[31] *Abramovitz v. A. Speciality Ins. Co.*, 739 F. Supp. 3d 937, 953 (D. Kan. 2024), appeal dismissed sub nom. *Abramovitz v. A. Specialty Ins. Co.*, No. 24-3105, 2024 WL 5358157 (10th Cir. Oct. 24, 2024); *U.S. Dep't of Labor v. Mr. Cao's LLC*, No. 22-1165-TC, 2024 WL 896198, at *8 (D. Kan. Mar. 1, 2024) (quoting *In re Homeadvisor, Inc. Litig.*, No. 16-1849-PAB, 2023 WL 196414, at *28 (D. Colo. Jan. 16, 2023)).

culpability of defendant; (4) whether the Court warned defendant in advance that default judgment would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions.[32] The factors do not constitute a rigid test; rather, they represent criteria for the Court to consider before imposing dispositive sanctions.[33]

Rule 37(b) does not *require* the Court to impose any of the enumerated sanctions, rather, it *permits* the Court to do so. The Court has significant discretion regarding whether to impose sanctions. And although the Court agrees Defendants have exhibited a clear and excessive pattern of failing to follow the Court's orders on source code discovery, it does not consider the unique set of facts in this case to present the extreme circumstance where dispositive sanction should be considered. Thus, the *Ehrenhaus* factors are considered as persuasive, but are not the sole basis for considering the monetary sanctions contemplated below. Plaintiff's requests for: 1) a finding of fact; and 2) certification of facts concerning contempt are DENIED and the Court GRANTS an award of reasonable attorney's fees as below.

### i)    Sanction of Reasonable Attorney's Fees

AGI seeks a sanction of $1,000 per day that Defendants failed to produce the source code information ordered by the Court and the reasonable attorney's fees incurred in bringing these repeated source code disputes to the Court's attention. The Court warned of a sanction of $1,000 per day until documents were produced at the December 3, 2024 discovery conference. During that conference, Defendants were ordered to convene their

---

[32] *Ehrenhaus*, 965 F.2d at 920.
[33] *See Ehrenhaus*, 965 F.2d at 921.

IT team on or before December 10, 2024 for the purpose of conducting discovery regarding their source code and to produce discovery in response to Plaintiff's Interrogatories and Requests for Production no later than December 17, 2024. Defendants filed a Certificate of Service indicating they served a response and objections to Plaintiff's First set of Interrogatories and Requests for Production by December 18, 2024. Therefore, the Court did not order such sanctions at that time.

But, Plaintiff raised deficiencies regarding the responses and production related to Interrogatory No. 8, requesting Defendants "identify and describe" "any code module" former AGI employees had any "input, commentary, or other review capacity on since September 12, 2022."[34] Plaintiff also isolated Request for Production No. 44 seeking "[c]opies of all AGI code in Your possession, custody, or control."[35] Specifically, Defendants identified the relevant code module for OPI EPIQ in response to interrogatories, but it was not produced to Plaintiff.[36] So, the Court expressly ordered the relevant code module for OPI EPIQ be produced no later than January 24, 2025 (ECF No. 157). However, after expert review of these source code productions into 2026, it comes to light in March 2026 during expert depositions, Defendants' source code productions remain incomplete where certain relevant information to the construction of their own code modules has been destroyed around the time this lawsuit was filed.[37]

---

[34] ECF No. 194-2 at 4.
[35] ECF No. 194-3 at 6.
[36] ECF No. 194-4 at 3.
[37] ECF No. 279-1 at 36 -40, 46-52, and 53-57.

Thus, the Court imposes a monetary sanction for Defendants' failure to abide by the substance of Discovery Orders ECF Nos. 138, 143, 144, 157, and 213 per Fed. R. Civ. P 37(b)(2), and failure to produce the entirety of the relevant source code to this litigation. The Court believes the payment of Plaintiff's reasonable attorney's fees per Fed. R. Civ. P. 37(b)(2)(C) for the time involved in pursuing the production of source code responsive to Interrogatory No. 8, Request for Production No. 44, and in pursuing this Motion for Sanctions is appropriate. The Court finds such a sanction is the least severe available sanction under Rule 37(b) that will adequately deter and punish Defendants for derailing source code discovery throughout this matter. The Court expressly warned OPI that continued failure to produce all relevant source code information would result in sanctions (ECF No. 143), and OPI nonetheless chose to ignore the Court's directives. Specifically, OPI failed to produce: 1) the full contents of AGI's stolen code, Mr. Penrod's jump drive, and all other copies of AGI's code absent from Penrod Vol. 4; 2) any copies of "hacked" BinManager firmware on OPI's system;[38] and 3) a complete copy of the OPI EPIQ code.

---

[38] The Court notes here it was confused neither party addressed the impact of the December 31, 2024 access date articulated in Plaintiff's forensic expert's report at the Motion Hearing. Here, it is suspected that the folders: 1) "Bm-processor"; 2) "bm-c"; and 3) "bm-b" may have been accessed by another computer system, not the one provided to the expert, on that 2024 date. (ECF No. 233-1 at 14, p. 46, *sealed*). The Court fears, from the discussion of a OneDrive backup at hearing, there is the potential these files were accessed after Defendants allege they were deleted in April 2023. The potential of access to "bm" folders, after Defendants contend all AGI code was deleted, further supports why the forensic analysis was necessary and the extent Defendants have gone to prevent Plaintiff from having accessing their own BinManager code. It further demonstrates Defendant OPI had access to AGI code, via their employee's laptop and USB drive, and potentially accessed that code in 2024, much earlier than their August 2025 production of the jump drive. But even if the last access point of AGI's code was in April 2023 by Defendants employee, as Defendants argued at hearing, Defendants demonstrate knowledge their employee took some of Plaintiff's code, after the completion of his employment with them, and into his employment with Defendant OPI, at least as early of the outset of this litigation.

The report of the forensic expert was significant to the Court when it came to the productions of AGI's own source code and the pathways from Mr. Penrod's jump drive. Plaintiff convinces the undersigned they have expended significant—and otherwise unnecessary—resources in an effort to get OPI to comply with its' discovery obligations, proving prejudice alone from mounting attorney's fees.[39] But additionally, AGI articulates why the risk of spoliation in the matter is high where the forensic expert suggests the time lapse in review of the jump drive and laptop, while the system continued to operate, led to an increased possibility the information was altered, overwritten, or deleted.[40]

The undersigned is convinced Defendants' counsel knew of the existence of the jump drive from the start of this litigation. And District Judge Broomes has already expressly found Defendants were misleading in their discovery responses regarding their possession of AGI source code.[41]  When it took over a year to produce the source code in Mr. Penrod's possession, after AGI knew the code existed, Defendants' conduct was suspicious. But when Defendants, through their counsel, attempted to place Mr. Penrod's relevant jump drive out of the reach of this Court, and that same jump drive had files that were not produced as copies by Defendants in Penrod Vol. 4,[42] Defendants conduct surrounding productions of AGI's source code in the matter became sanctionable. AGI did not receive complete copies of their own stolen code from Defendants until Mr. Penrod's jump drive was provided to AGI, by the Court, on August 21, 2025. The very attempt to

---

[39] *Faircloth v. Hickenlooper*, 758 F. App'x 659, 662 (10th Cir. 2018).
[40] ECF No. 233-1 at 10, *sealed*.
[41] ECF No. 271 at 9; ECF Nos. 194-2 at 3–4; 194-4 at 3; and 194-5 at 3–4.
[42] ECF No. 233-2 at 13-16, *sealed*.

place AGI's own source code out of the Court's reach, which was clearly relevant to this litigation per Fed. R. Civ. P. 26 and thus had duties of disclosure attached from the Initial Disclosures in the matter, is highly sanctionable, period.

And, when it comes to the code modules that existed on Defendants' own systems, it would be different if Defendants had timely objected to the specific source code productions ordered by the Court based on valid privilege or relevance grounds for the now missing source code modules and pathways. But, formal objection from Defendants to the production of particular code pathways is not what occurred here after each Court ordered production. Here, Defendants' objection to producing code made after the start of litigation was expressly overruled by the Court during the September 2024 and December 17, 2024 hearings when the Court expressly found the comparison of both parties' source code relevant to the broad nature of the discovery process in order for parties to narrow down what source code, if any, may have been misappropriated from Plaintiff's system. All source code modules former AGI employees worked on for Defendant OPI are relevant to this litigation and were to be produced by the close of discovery. The Defendant solely identified the cloud-based code for product OPI Blue as absent from their discovery productions, objecting to production as outside the scope of discovery for this matter. But Defendant was ordered to produce the source code relevant to Plaintiff's RFP No. 8 and OPI EPIQ multiple times through 2024 and into early 2025 and failed to meet the deadlines in the Court's orders. OPI produced some of the source code identified, but left the experts to figure out what pathways were missing from their incomplete productions down the line. And, it was also discovered the cloud-based code for OPI Blue was not all the source code

found to be omitted from these productions.[43] Omitting OPI EPIQ productions, against the Court's orders, because it is "in development" is not a valid, nor sustained objection for this matter. The development of OPI EPIQ is exactly the misappropriation Plaintiff is alleging.

The Court is also now aware the experts in this matter are missing additional source code pathways relevant to AGI's unjust enrichment claim and Defendants' long standing reverse engineering defense ahead of trial.[44] The discovery record clearly demonstrates blatant violation of Court orders involving Defendants' source code production. So, Defendants shall pay Plaintiff's reasonable attorney's fees from December 17, 2024 through August 21, 2025 related to Plaintiff's work obtaining their own source code, OPI's code modules responsive to RFP No. 8, and in pursuing this Motion for Sanctions. The parties shall confer regarding the amount of fees to be paid pursuant to this Order and submit an accounting of the same to the Court no later than **June 12, 2026**. Defendants shall pay the reasonable fees, as agreed, no later than **July 31, 2026** and shall certify its' payment to the Court. But, when it comes to the potential spoliation of electronic evidence a party had an obligation to store from the start of the litigation, as found above, Rule 37(e) governs further sanction analysis.

b)      **Fed. R. Civ. P. 37(e)**

AGI further contends an adverse inference sanction is expressly permitted under Rule 37(e)(2) for  similar situations where a "party acted with the intent to deprive another

---

[43] ECF No. 233-2 at 13-16, *sealed*.
[44] ECF No. 279-1 at 36-40, 46-52, and 53-57.

party of the [spoliated] information's use in the litigation."[45] While courts historically relied on their inherent powers to sanction a party for spoliating evidence, Federal Rule of Civil Procedure 37(e) was amended in 2015 to provide the exclusive framework to remedy the alleged spoliation of electronically stored information ("ESI").[46] Indeed, "[t]he exclusive nature of Rule 37(e) sanctions for the loss of ESI has been widely recognized."[47] As such, any reliance on Rule 37(b) regarding a spoliation of ESI sanction would be improper. When the alleged spoliation involves ESI, Federal Rule of Civil Procedure 37(e) governs.[48] In accordance, the Court will apply Rule 37(e) to the source code discovery record while considering AGI's proposed adverse inference sanction.

Supporting caselaw indicates spoliation is the "'destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'"[49] As a general rule, spoliation sanctions are proper when: 1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent; and 2) the adverse party was prejudiced by the destruction of the evidence.[50] To impose sanctions at its' discretion the Court must find that "a party has

---

[45] Fed. R. Civ. P. 37(e)(2).

[46] *See* Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment (stating the rule's language "forecloses reliance on inherent authority or state law to determine when certain measures should be used").

[47] *See Alsadi v. Intel Corp.*, No. CV-16-03738-PHX, 2020 WL 4035169, at *3 (D. Ariz. July 17, 2020) (collecting cases).

[48] *CCA Recordings 2255 Litig. v. U.S.*, No. 19-2491-JAR, 2021 WL 2212758, at *5 (D. Kan. June 1, 2021).

[49] *School–Link Techs., Inc. v. Applied Res., Inc.*, No. 05–2088–JWL, 2007 WL 677647, at *3 (D. Kan. Feb. 28, 2007) (quoting *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y.2004)).

[50] *Equal Employment Opportunity Commission v. JetStream Ground Services*, Inc., 2017 WL 6614481 (10th Cir. 2017). *See also Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th

acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[51] Under Rule 37(e)(1), the court "may order measures no greater than necessary to cure the prejudice."[52] "Spoliation of evidence causes prejudice when, as a result of the spoliation, the party claiming spoliation cannot present evidence essential to the underlying claim."[53] "[I]t is [Plaintiff's] burden to show [Defendant] acted in bad faith."[54] If the moving party is unable to show bad faith, the court may impose lesser sanctions.[55]

As articulated above, pursuant to Fed. R. Civ. P. 26, OPI had a duty to preserve all source code and pathways former AGI employees worked on at Defendant OPI from the commencement of this litigation. A litigant has a duty to preserve evidence that it knows or should know is relevant to imminent or ongoing litigation.[56] "This notice may come at the hands of differing events, but most commonly, a party is deemed to have notice of

Cir.2009). ("Spoliation sanctions are proper when '(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.' But if the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith.") (internal citations omitted); *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir.2007) ("A spoliation sanction is proper where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.").

[51] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991); *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008); *Turner*, 563 F.3d at 1149.

[52] Fed. R. Civ. P. 37(e)(1).

[53] *CCA Recordings*, 2021 WL 2212758, at *6 (internal quotations and citations omitted).

[54] *Ad Astra Recovery Servs., Inc. v. Heath*, 2020 WL 969762, at *7 (D. Kan. Feb. 28, 2020).

[55] *Linnebur v. United Tel. Ass'n, Inc.*, No. 10-1379-RDR, 2012 WL 2370110, at *1 (D. Kan. June 21, 2012).

[56] *Workman v. AB Electrolux Corp.*, No. 03–4195–JAR, 2005 WL 1896246, at *5 (D. Kan. Aug. 08, 2005) (citing *Jordan F. Miller Corp. v. Mid–Continent Aircraft Serv.*, Inc., No. 97–5089, 1998 WL 68879, at *5 (10th Cir. Feb. 20, 1998) (unpub.)); *Cook v. Olathe Health Sys., Inc.*, No. 10–CV–2133–KHV, 2011 WL 346089, at *4 (D. Kan. Feb. 2, 2011) (internal quotations and citations omitted).

pending litigation if the party has received a discovery request, a complaint has been filed, or any time a party receives notification that litigation is likely to be commenced."[57] Such preservation may not be "selective," saving only the evidence supporting a theory of liability and impeding the examination of another theory.[58] Once a party reasonably anticipates litigation, it must suspend its' routine document retention and destruction policy and put in place a litigation hold to ensure the preservation of relevant documents.[59] But, especially for trade sensitive matters, it is simply not sufficient for the litigant alone to implement a litigation hold. Counsel for the litigant must also oversee compliance with a litigation hold by monitoring the litigant's "efforts to retain and produce the relevant documents."[60] Counsel must communicate with the litigant to ensure "(1) that all sources of relevant information [are] discovered, (2) that relevant information is retained on a continuing basis; and (3) that relevant non-privileged material is produced to the opposing party."[61] A litigant's duty to preserve evidence extends to electronically stored information.[62]

Defendants argue Mr. Penrod, specifically, had no duty to preserve AGI's code as evidence relevant to this litigation, where he is not a Defendant. Counsel unconvincingly

---

[57] *Oxford House, Inc. v. City of Topeka*, No. 06–4004–RDR, 2007 WL 1246200, at *3 (D. Kan. Apr. 27, 2007) (internal citations omitted).

[58] *See Law v. Nat'l Collegiate Athletic Ass'n*, 134 F.3d 1438, 1442 (10th Cir. 1998) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)).

[59] *School–Link Techs., Inc.*, 2007 WL 677647, at *4 (quoting *Zubulake*, 229 F.R.D. at 431). *See also F.D.I.C. v. McCaffree*, 289 F.R.D. 331, 336–37 (D. Kan. 2012) (discussing the duty to preserve).

[60] *School–Link Techs., Inc.*, 2007 WL 677647, at *5.

[61] *Id.*; *Linnebur*, 2012 WL 2370110, at *2.

[62] *In re Krause*, 367 B.R. at 764.

represents it was not until a December 5, 2023 letter from Mr. Penrod to Defense counsel, a member at Jackson Lewis Law Firm, that Defense counsel became aware Mr. Penrod possessed copies of AGI's BinManager code relevant to this case.[63] In regards to production of their own source code and reverse engineering pathways to prove their exculpatory defense, Defendants argue they preserved and produced all relevant code and pathways, but the remaining code for the production of OPI EPIQ did not yet exist because it still "is not complete yet" and the cloud-based code for OPI Blue is irrelevant to the litigation.[64] The Court finds these arguments unpersuasive when it comes to OPI and its' counsels' obligation to preserve and produce the relevant source code to this litigation.

Defense counsel was obligated to preserve and produce the source code and pathways relevant to this litigation, quite frankly, from the start of this litigation in August 2023. But in the interest of fair and unbiased consideration, supposing Defense counsel's obligations arose in December 2023, when they *claimed to* obtain knowledge an OPI employee (i.e. Mr. Penrod) possessed AGI's code, they still did not meet their obligation of production. OPI did not produce the contents of Mr. Penrod's jump drive and laptop, nor did counsel on their behalf make the slightest effort to retain and produce the relevant documents on Mr. Penrod's jump drive and laptop through the year 2025. Plaintiff diligently sought this discovery, once they had knowledge of it, to the point of practically begging the Court for the discovery after Defendants' correspondence to the Special Master in April 2025 revealed counsel had physical possession of the jump drive the whole time.

---

[63] ECF No. 274 at 52.
[64] *Id*. at 36.

The jump drive was ultimately produced by the Court, not Defense counsel, to Plaintiff during yet another in-person Discovery Hearing on August 21, 2025. But, by the time Mr. Penrod's laptop and computer drive was forensically imaged a month later, on September 17, 2025, all copies of the code and file paths were gone.[65] Defendants, with their level of experience in this area, were not ignorant of their obligations to produce: 1) AGI's own misappropriated code; 2) the code relevant to OPI EPIQ; and 3) code demonstrating their reverse engineering efforts as early as the start of this litigation through Rule 26, but as late as September 2024 when District Judge Teeter informed them without question some code would be produced. And, Defendant OPI had knowledge of misappropriation, according to their own representations, in December 2023. Defendants' tactics, in the opinion of this Court, caused destruction of the relevant and discoverable source code and pathways from AGI's own BinManager code to the production of Defendants competitive product OPI EPIQ.[66]

Plaintiff also demonstrates substantial prejudice to the claims and defenses in this matter arising from Defendants' failure to preserve and the potential destruction of the relevant source code and pathways. When an aggrieved party seeks an adverse inference jury instruction—as here—that party must also prove bad faith on the part of the producing party.[67] Mere negligence in losing or destroying documents is not sufficient "because it does not support an inference of consciousness of a weak case."[68] The moving party has

---

[65] ECF No. 233-1 at 9 & 15, *sealed*.
[66] ECF No. 279-1 at 36 -40, 46-52, and 53-57.
[67] *Turner*, 563 F.3d at 1149.
[68] *Id*. (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (D.Kan.1997)).

the burden to demonstrate actual prejudice rather than mere theoretical prejudice.[69] This

requires some showing that the destroyed evidence would have been relevant to the claims

or defenses in the case.[70] It is not enough to speculate that the moving party is prejudiced

because the evidence no longer exists, for this is true in any case involving spoliation of

evidence.[71] Here, Plaintiff provides substantial evidence that the spoiled source code

pathways were crucial to prove the extent of Defendants misappropriations and the

necessary elements of Plaintiff's unjust enrichment claims.

Factually to support misappropriation for their Trade Secret Act claim and a benefit

conferred for their unjust enrichment claim, AGI contends its' former employee, Mr.

Penrod, downloaded the stolen source code he stored on the jump drive to a personal laptop,

used for his contracting work with OPI, and he  accessed the stolen source code in

furtherance of his OPI job duties, including to assist OPI's BinManager integration project

at Defendant Weiss' request. Upon review of the forensic expert testimony in this case, the

Court is convinced the spoiled source code pathways are exactly the pathways relevant to

establish misappropriation occurred, or to establish Defendants' reverse engineering

defense to the allegations. In this instance, expert review of the contents of the jump drive

revealed copies of Plaintiff's code,  and file paths used to access it, were evaporated by the

---

[69] *Turner*, 563 F.3d at 1150 ("[T]here is no evidence that Turner was 'actually rather than merely theoretically' prejudiced by their loss.").

[70] *See Henning*, 530 F.3d at 1220 (stating that without proving relevance, the party moving for sanctions could not show she was prejudiced).

[71] *Linnebur*, 2012 WL 2370110, at *3 ("It is not enough for a party seeking spoliation sanctions, however, to raise an issue of theoretical prejudice that prejudice cannot be known because the documents and information no longer exist. This is true in any instance involving the destruction of evidence."); *Herrmann v. Rain Link, Inc.*, No. 11-1123-RDR, 2013 WL 4028759 at *3 (D. Kan. Aug. 7, 2013) (citations omitted).

September 2025 search.[72] And, review of OPI's production of its' own OPI EPIQ source code, by both parties' experts, demonstrates OPI failed to produce portions of code that would shed light on the extent of OPI's misappropriation, and again, those pathways no longer exist.[73] Most important, the source code and pathways establishing any misappropriation or legitimate reverse engineering efforts, as reviewed by the experts, is the evidence at the crux of this trade secret matter. So, the Court finds both relevant categories of source code discovery, albeit destroyed, were extremely relevant to proving Plaintiff's Trade Secret Act and unjust enrichment claims as well as Defendants' affirmative defense. Both parties are then prejudiced, but Plaintiff more so, and intentionally.

Before addressing the sanctions provision of subsection (e)(2), the Court must find that four prerequisites are met: 1) ESI was lost; 2) a party had a duty to preserve the lost ESI; 3) the party failed to take reasonable steps to discharge its duty; and 4) the lost ESI cannot be restored or replaced.[74] Having determined these prerequisites, the Court then must determine whether Plaintiff has made the requisite showing of bad-faith intent necessary to impose the sanctions requested by Plaintiff under subsection (e)(2).[75] To find bad faith, the Court must determine if Defendants willfully or intentionally (i.e., in bad

---

[72] ECF No. 233-1 at 9 & 15, *sealed*.

[73] ECF No. 233-2 at 17-20, *sealed*; ECF No. 279-1 at 36 -40, 46-52, and 53-57.

[74] Fed. R. Civ. P. 37(e); *Stovall v. Brykan Legends, LLC*, No. 17-2412-JWL-JPO, 2019 WL 480559, at *2 (D. Kan. Feb. 7, 2019).

[75] *Stovall v. Brykan Legends, LLC*, No. 17-2412-JWL, 2019 WL 480559, at *2 (D. Kan. Feb. 7, 2019).

faith) destroyed the electronic evidence.[76] The Court may consider two heavily weighted factors when considering an appropriate sanction: (1) the degree of culpability of the party who destroyed the evidence; and (2) the degree of actual prejudice to the other party.[77] A court should impose the least onerous sanction that will remedy the prejudice, punish the past wrongdoing, and deter future wrongdoing.[78] "[T]he general rule is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction."[79]

The Court does find here the failure to preserve the relevant source code material and pathways in this matter was done in bad faith with knowledge of a compromise in their case and reverse engineering defense, warranting a finding of bad faith.[80] AGI has established, and the Court is convinced, OPI and its' prior and current counsel knew Mr. Penrod had AGI's source code in his possession while he worked at OPI as early as December 2023. While counsel was in possession of this jump drive evidence from that point in December 2023, the jump drive was never produced to Plaintiff in this matter, despite clear Rule 26 obligation and discovery requests encompassing the discovery. OPI's knowing and intentional delay in producing Mr. Penrod's devices exacerbated the

---

[76] *In re Krause*, 367 B.R. at 766.
[77] *Jordan F. Miller Corp*, 1998 WL 68879 at *4; *Workman v. AB Electrolux Corp.*, 2005 WL 1896246 (D. Kan. Aug.8, 2005).
[78] *Jordan F. Miller Corp..*, 1998 WL 68879 at *6.
[79] *Aramburu.*, 112 F.3d at 1407.
[80] *Id.* (citing *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir.1975) ("Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case.").

spoliation of the pathways from his devices, completely depriving parties of that relevant evidence.[81] And expert review of the two-year delayed production of the jump drive revealed that earlier production, including when the duty arose in 2023, could have preserved those relevant pathways.[82] Further, and of clear importance, Douglas Miller's deposition testimony established  certain admittedly relevant materials in Defendants' systems relating to the source code for this litigation "no longer exists."[83] Mr. Miller specifically testified the destroyed materials include source code and were destroyed around the time this lawsuit was filed.[84] This is bad faith.

The Court painstakingly warned OPI about the repercussions of not making full, complete, accurate, and timely productions of source code in this matter through 2024 and into 2025. The Court has progressively conditioned OPI's conduct, holding weekly discovery conferences to monitor the discovery progress in this case through the start of 2025, without success. OPI simply refused to be forthcoming with Plaintiff's own source code and OPI's code modules relevant to this litigation. The retained experts in this case are now clear on what is missing for each parties' claims. And there is nothing left for the Court to do now but administer sanctions that mirror the egregiousness of Defendants' conduct in this matter. Defendants cannot argue in the same breath the evidence of reverse engineering Plaintiff's BinManager code never existed on their systems and at the same

---

[81] ECF No. 233-1 at 9 & 15, *sealed*; ECF No. 233-2 at 17-20, *sealed*; ECF No. 279-1 at 36 -40, 46-52, and 53-57.
[82] ECF No. 233-1 at 9 & 15, *sealed*.
[83] ECF No. 279-1 at 6-9.
[84] ECF No. 279-1 at 36 -40, 46-52, and 53-57.

time argue as an affirmative defense they reverse engineered Plaintiff's BinManager product all above board, with any level of confidence. The evidence was crucial and was intentionally spoiled in this litigation. The Court agrees with Plaintiff that evidence Defendants used Plaintiff's BinManager code to reverse engineer OPI EPIQ did once exist on the Defendants' servers, and they either failed to preserve it intentionally or destroyed it when they realized the strength of Plaintiff's claims and/or the compromise in their defense.[85] Trade secret litigation in this District will not proceed this way. Defendants conduct in this matter must be strongly dissuaded. Thus, the undersigned recommends that the District Judge adopt the adverse inference of spoliation in this matter.

## V.    Conclusion

The undersigned finds the discovery record demonstrates clear violations in bad faith of the Court's orders for source code production. Defendant was ordered to fully produce AGI's source code and their own source code for comparison, and subject to the existing protective orders. Yet, in no uncertain terms on multiple occasions, Defendants and their counsel failed to abide by these orders. As a result, Defendants shall pay Plaintiff's reasonable attorney's fees from December 17, 2024 through August 21, 2025 only related to Plaintiff's work obtaining their own source code and OPI's code modules responsive to RFP No. 44, Interrogatory No. 8, and in pursuing this Motion for Sanctions.

The undersigned further finds crucial source code ESI relevant to this matter was intentionally destroyed. Plaintiff has clearly shown how their trade secret and unjust

---

[85] ECF No. 233-1 at 9 & 15, *sealed*; ECF No. 233-2 at 17-20, *sealed*; ECF No. 279-1 at 36 -40, 46-52, and 53-57.

enrichment claims were prejudiced by the destruction of this discovery. The Court further finds Defendants' own reverse engineering defense to be prejudiced by these destructions. The record overwhelmingly demonstrates the destruction of ESI was a result of Defendants' failure to make timely productions, and thus was done in bad faith. The undersigned magistrate judge recommends that the District Judge **GRANT** Plaintiff's motion in so far as it seeks an adverse-inference jury instruction for spoliation.

Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72, and D. Kan. Rule 72.1.4, the parties shall have fourteen (14) days after service of a copy of this Report and Recommendations to file any written objections. A party must file any objections within the fourteen-day period if that party wants to have appellate review of the proposed findings of fact, conclusions of law, or recommended disposition. If no objections are timely filed, no appellate review will be allowed by any court.

**IT IS SO ORDERED**. Defendants' Motion to Strike **(ECF No. 283)** is **DENIED**.

**IT IS FURTHER ORDERED.** Defendants shall pay Plaintiff's reasonable attorney's fees from December 17, 2024 through August 21, 2025 related to Plaintiff's work obtaining their own source code responsive to Request for Production No. 44, OPI's code modules responsive to Interrogatory No. 8, and in pursuing this Motion for Sanctions.

**IT IS FURTHER ORDERED.** The parties shall confer regarding the amount of fees to be paid pursuant to this Order and submit an accounting of the same to the Court no later than **June 12, 2026.**

**IT IS FURTHER ORDERED.** Defendants shall pay the reasonable fees, as agreed, no later than **July 31, 2026** and shall certify its' payment to the Court.

36

**IT IS FURTHER RECOMENDED** the Court adopt the following adverse inference: "OPI was under a duty to preserve electronic records from computers and servers used by its employees, including AGI's former employees who later became employed by OPISystems, Inc., where copies of AGI's source code and documents were stored and accessed. OPI did not take reasonable steps to preserve those electronic records, and those electronic records were lost as a result. The lost evidence cannot be restored or replaced by additional information provided during this litigation. Because of this, you may infer that those electronic records would have been unfavorable to OPI."

**IT IS SO ORDERED.**

Dated May 22, 2026 at Wichita, Kansas.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
U. S. Magistrate Judge

37