IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AGI SURETRACK, LLC,

Plaintiff,

v. Case No. 23-2372-JWB

OPISYSTEMS INC., INTEGRIS USA, LLC,
SETH TACKETT, and ADAM WEISS,

Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff's motion for leave to file redacted filings. (Doc. 361.) The motion is fully briefed and ripe for decision. (Doc. 362.) The motion is GRANTED for the reasons, and under the limitations, stated herein.

## I. Facts and Procedural History

This case involves alleged trade secret misappropriation and breach of employment agreements arising out of a dispute between competitors in the grain storage monitoring industry. AGI Suretrack, LLC ("Plaintiff") alleges that OPISystems Inc. and Integris USA, LLC hired its former employees, Seth Tackett and Adam Weiss ("Defendants"), and used Plaintiff's confidential information and proprietary source code to develop and market competing products. (Doc. 286.)

As litigation progressed, the parties moved for and briefed summary judgment motions, *Daubert* motions, and Defendants objected to the magistrate judge's Report and Recommendation ("R&R") on sanctions. (Docs. 291–299, 301–303, 308, 309, 311–313, 315, 317, 319, 325, 327–330, 332, 334, 335, 339, 340). However, amidst the briefing, the parties filed motions seeking leave to file approximately 5,000 pages under seal—which, in some cases, included entire briefs. (Docs. 306, 323, 324, 338, 342–344.) Beyond the fact that this severely interfered with the public's

right of access to judicial records, the parties wholly failed to comply with the requirements for motions to seal under D. Kan. Rule 5.4.2(c). Accordingly, the court denied without prejudice all pending motions to seal and *sua sponte* struck those same documents the parties sought to seal. (Doc. 349 at 6.) On August 12, 2026, the court held a case management conference during which the parties expressed a desire to seek redactions on a much smaller number of documents. (Docs. 354, 358.) The court thus entered a scheduling order that instructed the parties to file any renewed motions to seal or redact by September 24. (Doc. 359.) Plaintiff did so (Doc. 361) and Defendants responded (Doc. 362). The court is now prepared to rule.

## II. Standard

"Courts have long recognized a common-law right of access to judicial records." *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978). "This right, however, is not absolute. The presumption of access . . . can be rebutted if countervailing interests heavily outweigh the public interests in access." *Id*. (internal quotation marks omitted). "The party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Id.*; *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2020 WL 6742787, at *1 (D. Kan. Nov. 17, 2020) ("The party seeking to seal the documents must articulate a real and substantial interest that justifies depriving the public of access to the records that inform [the court's] decision-making process." (internal quotation marks omitted). "[T]he public's interest in access to judicial records is lessened when the contents are not used to determine the litigant's substantive legal rights." *Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1162 n.8 (10th Cir. 2016) (internal citations omitted). To meet its burden, Plaintiff "must come forward with evidence as to the nature of the public or private harm that would result if it were so filed." *Heartland Surgical Specialty Hosp., LLC v. Midwest*

*Div., Inc.*, No. 05-2164, 2007 WL 101858, at *5 (D. Kan. Jan. 10, 2007). Under D. Kan. Rule 5.4.2(c), motions to seal must include the following:

> (1) a description of the specific portions of the document, without attaching the document in question or revealing the confidential information, that the Proponent asks the court to maintain under seal or allow to be redacted, which must be narrowly tailored to the asserted confidentiality interest;
> (2) the confidentiality interest to be protected and why such interest outweighs the presumption of public access (stipulations between the parties or stipulated protective orders, alone, are insufficient to justify restriction);
> (3) a clearly defined and serious injury that would result in the absence of restricting public access;
> (4) why no lesser alternative is practicable or why restricting public access will adequately protect the confidentiality interest in question; . . .

*See also Bad Rhino Games, LLC v. Turn Me Up Games, Inc.*, No. 23-2303-JWB, 2024 WL 5008619, at *1 (D. Kan. Dec. 5, 2024); *Uhlig LLC v. CoreLogic, Inc*., No. 21-2543-DDC, 2024 WL 1703557, at *1 (D. Kan. Apr. 19, 2024) ("The party seeking to deny public access also must comply with our local rule.").

**III. Analysis**

Plaintiff seeks to redact specific sentences, table entries, and transcript lines across approximately ninety-eight pages of excerpted exhibits and supports each category with the declaration of David Postill, the executive responsible for the AGI Suretrack business. (Doc. 361.) Plaintiff sorts its proposed redactions into five categories and defines each one in its motion. (*Id.* at 4–5.) The tables that follow those definitions list every redaction by exhibit. Having reviewed the material referenced in those tables, the court finds that Plaintiff's definitions accurately describe the material sought to be redacted, so the court addresses the redactions by category rather than individually and holds that Plaintiff has satisfied Rule 5.4.2(c) as to each category.

Category 1 covers technical details of Plaintiff's BinManager system, including source code functionality, algorithm inputs, and the structure of messages and command identifiers.

Postill attests that this information is not public, derives value from its secrecy, and would let competitors build it into their own products if made public. (Doc. 361-1 ¶ 5.) As for Category 2, it covers consulting work a third-party company prepared for Plaintiff, including sales and pricing strategies, market and competitive analyses, financial forecast numbers including estimated revenue and adoption rate in Canada and the United States, and named prospective customers, which AGI keeps confidential and still uses. (*Id.* ¶ 6.) Next is Category 3, which covers internal financial data such as valuations, revenue, units sold, margins, and per-customer value, which is not released even to shareholders. (*Id.* ¶ 7.) This information reveals where Plaintiff plans to grow and its future business strategies. Category 4 covers the negotiated billing rates between Plaintiff and its counsel: Shook, Hardy & Bacon LLP. (*Id.* ¶ 8.) The hours and tasks remain public; only the discount offered by counsel's law firm to Plaintiff is withheld. Finally, Category 5 includes personally identifiable information ("PII") including employees' salaries. (*Id.* ¶ 9.)

In each instance, the injury is disclosure of AGI's BinManager source code and algorithms, non-public financial information, business strategies, negotiated billing rates, or employees' private salary information. The court finds that publishing those specifics would give competitors what Plaintiff sued to protect and other non-public, proprietary details of AGI's business. Accordingly, the court finds that Plaintiff has articulated a real and substantial interest which justifies depriving the public of access and that redaction is the least restrictive alternative available. The parties' arguments and the general facts remain public.

Defendants argue that nothing should be redacted or sealed. (Doc. 362.) At the outset, the court notes that Defendants have sharply changed their position. Defendants originally asked to keep thousands of pages under seal, many of them the same that Plaintiff now seeks to redact. (Docs. 323, 342, 343.) Previously, Defendants argued that "the parties will suffer clearly defined

and severe competitive harm insofar as the proprietary information, competitive information, and other commercially sensitive information . . . will be made publicly available to . . . industry competitors." (Doc. 343 at 2; *see* Docs. 342 at 1–2; 323 at 2.) Now that Plaintiff has narrowed its request, Defendants object to every redaction without explaining what has changed. Defendants' reversal hinders their present claim that none of this information should be redacted.[1]

More substantively, Defendants argue that the trade secret information is disclosed in a patent covering Plaintiff's grain-bin monitoring system, that none of the information is actually a trade secret or confidential, that much of the information is irrelevant, and therefore that no interest outweighs public access. (Doc. 362.) Many of its item-by-item objections, however, are too vague to be useful; they cite entire exhibits or Wikipedia without identifying where the redacted information appears publicly. And where Plaintiff seeks to redact specifics of its own proprietary code and confidential information, Defendants respond with industry terminology that describes the technology in general terms.

Defendants also point to Postill's deposition testimony that he does not know what a trade secret is. That testimony does not undermine his declaration, which addresses facts within his knowledge: whether the information is public, how Plaintiff treats it, and the harm disclosure would cause. More fundamentally, however, whether this material qualifies as a trade secret is a merits question for a later stage, and confidential business information can justify redaction either way. *See Nixon*, 435 U.S. at 598.

Defendants' category-specific objections fare no better. As for Category 1, the patent, Plaintiff's trade secret identification statement, and public descriptions of certain technologies describe the system in general terms. It is the specific parameters, code, and inputs of Plaintiff's

[1] Defendants argue that Plaintiff's single-spaced tables exceed the page limit. (Doc. 362 at 1 n.1.) The tables supply the description Rule 5.4.2(c)(1) requires, and Defendants responded in kind. The court declines to disregard them.

grain-bin monitoring system that Plaintiff seeks to redact. As for Category 2, Defendants label the third-party companies report as irrelevant, dated, or publicly available. First, in almost every objection, save one, Defendants merely states the information is "[p]ublicly available," without citing to anything. (Doc. 362 at 7.) To simply state the proposition does not make it so. In that one instance, Defendant points the court to Plaintiff's Management Discussion and Analysis ("MD&A") report and argues the "figures [sought to be redacted are] publicly disclosed." (Docs. 362 at 7–8; 362-5 at 46–47.) Having reviewed the cited evidence, however, the report cited by Defendants does not include the quoted material that Plaintiff seeks to redact. Thus, the court fails to see how this information is publicly available based on what Defendants cite. As for Defendants argument on the grounds of relevance, this only weakens the public's interest in access. *Deherrera*, 820 F.3d at 1162 n.8. In sum, Defendants largely cite nothing showing that the material has been disclosed. As for Category 3, Defendants cite pages of AGI's quarterly report without pointing the court to where the specific figures Plaintiff seeks to redact appear there. Having reviewed those cited pages, the court does not see any of the figures that Plaintiff seeks to redact. (Doc. 362-5 at 20, 24, 46–48.) Finally, Defendants devote only a few sentences to Categories 4 and 5. (Doc. 362 at 9.) Those objections are conclusory and, in places, inaccurate. Defendants offer no evidence that the negotiated rates or employee salaries have been publicly disclosed, and the privacy interest of non-party employees in their compensation does not expire with time. Unsupported assertions do not rebut a showing supported by a sworn declaration.

Plaintiff also designated material it seeks to redact within Defendants' previously sealed exhibits. (Doc. 361 at 13–17.) Defendants' arguments against redacting those materials fail for the same reasons. Accordingly, if Defendants again file any of those documents, they shall redact the specific information Plaintiff identified. (*Id.*)

In conclusion, granting leave to redact does not mean that every unredacted document should be placed on the docket under seal. The redactions consist largely of text that might not necessarily be material to the issues presented by the motions soon to be filed. (*See* Doc. 359.) Therefore, the court will not maintain a sealed record of text it does not need to reference in order to decide those motions. At the same time, however, the court recognizes that a party may need the court to see particular redacted text to resolve an issue. Accordingly, the parties may file unredacted versions of designated text under seal only if (1) that specific text is cited in a brief supporting a motion, and (2) the text is material to an issue the court must decide. Any sealed filing shall be limited to the pages containing the cited text. **Designated text that does not meet both requirements shall be filed only in redacted form**. *See Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 461 (10th Cir. 1980) ("It is beyond question that this Court has discretionary power to control and seal, if necessary, records and files in its possession.").

## IV. Conclusion

For the foregoing reasons, and subject to the limitation on filing documents under seal described in the preceding paragraph, Plaintiff's motion for leave to file redacted filings (Doc. 361) is GRANTED.

More specifically, the motion is GRANTED to the extent that (1) Plaintiff may file the exhibits identified in its motion with the designated text redacted on the public record, and (2) if Defendants file any document listed in Doc. 361 at 13–17, they shall redact the portions Plaintiff identified.

IT IS SO ORDERED. Dated this 16th day of October, 2026.

s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE